**THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
*Electronically Filed*

**SISTERS FOR LIFE, INC., et al.,**                                    **PLAINTIFFS**

**v.**                                                    **Case No. 3:21-cv-00367-RGJ**

**LOUISVILLE/JEFFERSON COUNTY**
**METRO GOVERNMENT, et al.,**                              **DEFENDANTS**

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

The Defendants, Louisville/Jefferson County Metro Government ("Metro Government"), Mayor Greg Fischer, Chief Erika Shields and Mike O'Connell (collectively "Defendants"), by counsel, for their Response in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction related to Metro Government's action taken in the passing of Metro Ordinance O-179-21 ("the Ordinance") states this Ordinance is intended to ensure safe, unobstructed entry to and exit from a healthcare facility. Because Plaintiffs are not entitled to their requested relief under the law, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction should be denied.

## I. INTRODUCTION

Plaintiffs, Sister for Life, Inc, Angela Minter and Kentucky Right to Life Association, Inc. (collectively "Plaintiffs"), have moved for a temporary restraining order and preliminary injunction seeking relief from alleged violations of their First Amendment rights due to the subject Ordinance that allows healthcare facilities to create small, ten-foot buffer zones outside of their entrance to ensure patients can enter and exit the facility safely. Plaintiffs seek to be able to walk next to patients entering healthcare facilities and minister to them inside of the buffer zone. (*See*

DK 2-1, Plaintiffs' Memorandum in Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction (hereinafter "Pl's Memorandum") at p. 2). The Ordinance would prevent Plaintiffs from walking directly next to patients entering and exiting healthcare facilities inside the buffer zone. Plaintiffs seek to enjoin Defendants, "their officers, agents, servants, employees, and attorney, and those acting in active concert with them" from enforcing the Ordinance. (*See* Plaintiffs' Proposed Order).

In their Amended Complaint, Plaintiffs also claim violations of Kentucky's Religious Freedom Restoration Act.  (DK 5, Amended Complaint at p. 18, para. 73-76.)

Plaintiffs cannot satisfy the rigid requirements necessary for injunctive relief and are not likely to succeed on the merits because courts have long recognized the constitutionality of buffer zones, and specifically buffer zones outside of healthcare facilities, when there is a significant and legitimate government interest and the ordinance is narrowly tailored to not overburden speech.

Here, the Ordinance was passed by Louisville/Jefferson County Metro Council on May 20, 2021 because that legislative body determined that there was a significant and legitimate need for buffer zones outside of health care facilities. The application of the Ordinance does not violate Plaintiffs' free speech and religious rights because it is content neutral with a modest buffer zone which burdens as little speech as necessary to serve those government interests. The Ordinance is narrowly tailored to achieve a significant and legitimate government interest in protecting its citizens without violation of alleged competing rights.   Further, the Ordinance does not substantially burden Plaintiffs right to act on a religious belief.

Moreover, preliminary injunctions are extraordinary and drastic remedies.  Plaintiffs have failed to carry their burden of justifying such relief by failing to show any irreparable harm they will suffer and the other elements required for injunctive relief are not present. The balance of

harm and public interest weighs in favor of denying Plaintiffs' temporary restraining order and preliminary injunctive relief.

## II. HISTORY OF ORDINANCE

Louisville/Jefferson County has had a long history of anti-abortion protests. The protests outside of the EMW Women's Surgical Center ("EMW Center") are distinct because the EMW Center is one of the only clinics in Kentucky that provides abortion services.[1] Because it is one of the only providers, the clinic consistently has presence from out of town protestors as well as local protestors. The protestors regularly harass, stalk, intimidate and assault patients entering and exiting the clinic. Monthly reports from the EMW Center indicate that just between January 2021 and March 2021, there have been a total of at least 1,447 reported protestors outside of the EMW Center with about 23 protestors on any given day. *See* copy of 2021 NAF Monthly Reports attached as **Exhibit A.**

These reports indicate a pattern of obstruction, trespassing, assault and stalking and demonstrate the frequency in which the Louisville Metro Police Department ("LMPD") is contacted. *See* **Exhibit A**. Video evidence from March 6, 2021 shows a protestor grabbing a patient and dragging them away from the healthcare facility entrance.[2]  *See* link to Video Evidence, https://drive.google.com/file/d/1S8oM1gYCUfRBdTcnvaVEXIKVWz7ZfMdP/view. **Exhibit B**. This video evidence also shows patients begin stalked, harassed, touched and intimidated. *Id*. These are not one-off occurrences. These are occurrences that happen on a regular basis outside of the clinic.

---

[1] Planned Parenthood in Louisville recently became Kentucky's second clinic authorized to provide abortion services.
[2] Exhibits A-F are part of the legislative record for O-179-21 and are just the tip of the iceberg of evidence to support the significant government interest. A District Court is entitled to take judicial notice of legislative records or public records that are also public records. *Sensations, Inc. v. City of Grand Rapids*, 2006 WL 5779504 at *3 (W.D. Mich. Oct. 23, 2006), aff'd, 526 F.3d 291 (6th Cir. 2008) (listing similar cases).

Additionally, a study of nine (9) reproductive health clinics in Ohio, Kentucky and West Virginia conducted by the Ohio Policy Evaluation Network (OPEN) found that more than 50% of patients from the EMW Center reported protestors as a challenge to receiving healthcare; this is three times the average for the other eight clinics combined. *See* OPEN study, copy attached as **Exhibit C**. Testimony from certified anesthesiologist Margorie Fitzgerald on April 28, 2021, discussed the effects of these protestors on patients' vital signs revealing that EMW patients routinely have "abnormal vital signs" and their blood pressure and heart rates are "that seen in a patient having a panic attack" which would "add risk to a medical procedure." *See* Margorie Fitzgerald testimony attached as **Exhibit D**.

Further, memorandum from LMPD indicates that when incidents outside of the EMW Center occur, officers are required to make judgment calls on whether enforcing existing ordinances or laws would violate the protestor's First Amendment rights. *See* LMPD Memorandum from March 24, 2021 attached as **Exhibit E**.

The subject Ordinance was passed because Metro Council determined, after hearing and seeing all of the evidence, that a legitimate and significant government interest existed to protect patients entering and exiting healthcare facilities in Jefferson Count, KY.

### III. <u>COUNTERSTATEMENT OF FACTS</u>

Louisville/Jefferson County Metro Council ("Metro Council") passed Ordinance O-179-21 on May 20, 2021. *See* Amended O-179-21 attached as **Exhibit F.** The Ordinance states in relevant part that:

> No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a 'buffer zone' on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and 10 feet from side to side, during the facility's posted business hours, except:

4

(a)     persons entering or leaving such facility;

(b)     persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility; or

(c)     law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; or

(d)     employees or agents of such facility acting within the scope of their employment.

"Entrance" is defined as

[A]ny door to a healthcare facility that directly abuts the public sidewalk; provided, however, that if the door does not directly abut the public sidewalk the 'entrance' shall be the point at which the public sidewalk intersects with a pathway leading to the door.

Despite Plaintiffs' serious misrepresentation of the Ordinance, the buffer zone created by the Ordinance is one of the smallest buffer zones that currently exists in the United States. It extends five feet in both directions from the entrance to a healthcare facility and runs perpendicularly ending at the sidewalk curb.  (*See* Photos of Demarcation Lines at EMW created by Public Works, attached as **Exhibit G**. Moreover, the Ordinance mandates that a healthcare facility request the demarcation of a buffer zone by Louisville Metro Department of Public Works ("Public Works"). A buffer zone is not created automatically, nor can a healthcare facility create a buffer zone themselves. It must be requested through Public Works. (*See* Affidavit of Jeffrey Brown, **Exhibit H** with sub-exhibits).

Because of Plaintiffs' distorted characterization of the Ordinance, Plaintiffs allege that the buffer zone outside of EMW covers "half a city block of sidewalk." (*See* Pl's Memorandum p. 7). Further, the Amended Complaint states the buffer zone practically envelopes the entire city block. (*See* DK 5, para. 34-37).  Plaintiffs also allege that healthcare facilities that permit sidewalk

ministry are now prohibited from doing so by the Ordinance. (*See* Pl's Memorandum p. 8). Again, this is untrue because healthcare facilities must request a buffer zone from Public Works. It is not required.

The reality is that the Ordinance creates one of the smallest buffer zones in the United States and burdens very minimal speech while protecting citizens by ensuring safe access to healthcare, but also by providing enforcement officers with a bright-line rule to ensure speech and patients are protected. The Ordinance as applied creates a buffer zone that extends ten feet from the entrance of a healthcare facility. Thus, if a person is walking directly in the middle of the buffer zone, Plaintiffs would be, at most, five feet away from the person entering the facility. Certainly, Plaintiffs can be seen, heard and distribute pamphlets from 10 feet away. Plaintiffs allege an absolute right to "evangelize" in a person's face as they enter a healthcare facility. This right does not exist and any burden on Plaintiffs' speech is minimal.

## IV. APPLICABLE STANDARD OF REVIEW

The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo. *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) In determining whether a preliminary injunction should issue a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *American Civil Liberties Union Fund of Michigan v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007)).

But in First Amendment cases, "'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.'" *Livingston County*, 796 F.3d at 642 (citing and quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644,649 (6th Cir. 2007)). This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]." *Id*. (quoting *Hamilton's Bogarts*, 501 F.3d at 649); see *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014), *cert. denied*, ---- U.S. ----, 135 S.Ct. 950, 190 L.Ed.2d 831 (2015) ("[W]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Livingston County*, 796 F.3d at 642 (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012))."

In addition, "preliminary injunctions are extraordinary and drastic remedies … never awarded as of right." *Livingston County*, 796 F.3d at 642 (quoting *Platt v. Bd. of Comm'rs on Grievance & Discipline of Ohio Supreme* Court, 769 F.3d 447, 453 (6th Cir. 2014)). The party seeking a preliminary injunction bears the burden of justifying such relief." *Id.* (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012))."

## V. <u>ARGUMENT</u>

1.  PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

### a. The Ordinance Does Not Violate First Amendment Rights

#### i. <u>The Ordinance is Content Neutral</u>

Content neutral restrictions regulate the time, place and manner of speech, but not the content of speech. Here, the Ordinance does not attempt to regulate the content of any individual's speech, but rather aims to regulate the time, place and manner of the individual's speech to ensure patients can enter and exit healthcare facilities safely. Although Plaintiffs argue that the Ordinance

allows escorts to "offer encouragement of those seeking to obtain an abortion," this is untrue. (See Pl's Memorandum p. 11).

The plain language of the Ordinance states that agents, or escorts in this situation, can only be in the buffer zone if "acting within the scope of their employment." Encouraging abortions is not within the scope of an escort's job duties. Their job is to assist patients with safe passage to and from the healthcare facility because of the harassment, intimidation and assaults by the protestors. In fact, a buffer zone may eliminate the need for escorts all together. Further, if escorts are having pro-abortion discussions with patients in the buffer zone, that escort would be in violation of the Ordinance and subject to the same penalties as anyone one else. Thus, the Ordinance is content-neutral because it applies equally to everyone.

Because the Ordinance is content-neutral it is subject to intermediate scrutiny. *See generally*, *Hill v. Colorado*, 530 U.S. 703 (2000). In fact, courts typically hold that buffer zone laws are content neutral. *See e.g., Id.*; *see also McCullen v. Coakley*, 573 U.S. 464, 478-80 (2014); *see also Turco v. City of Englewood, New Jersey*, 935 F.3d 155, 162 (3d Cir. 2019); *see also Price v. City of Chicago*, 915 F.3d 1107, 1111 (7th Cir. 2019), cert. denied sub nom. *Price v. City of Chicago, Illinois,* 141 S. Ct. 185, 207 L. Ed. 2d 1116 (2020). Content-neutral restriction are reviewed by courts under an intermediate scrutiny standard and must be "narrowly tailored to serve a significant government interest." *McCullen*, 573 U.S. at 486 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989)).

ii. The Ordinance is Narrowly Tailored to Serve a Substantial Government Interest.

The narrowly tailored requirement is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Here,

although an ordinance already exists to prevent sidewalk obstruction, as Plaintiff mentions, it is clear the ordinance is ineffective. *See* **Exhibits A-E**. Moreover, the United States Supreme Court held that 'we have emphasized on more than one occasion, when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill,* 530 U.S. at 726.

In *Hill*, the Supreme Court recognized that patients entering and exiting health care facilities "are often in particularly vulnerable physical and emotional conditions" and "protecting these persons from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach" is a substantial and legitimate interest. *Id*. at 729. Moreover, the *Hill* Court found that deference must be given to a legislature's judgment when determining such interests. *Id*. 704; see also *Turco,* 935 F.3d at 171 ("This principle is well-established in First Amendment jurisprudence, and we are mindful of our duty to 'accord a measure of deference to the judgment' of Englewood city council" citing *Hill* 530 U.S. at 704).

Additionally, the *Hill* Court found that an 8-foot radius[3] buffer zone outside of healthcare facilities left ample room to communicate a message through speech with little interference on that speaker's ability to communicate. *Id*. at 729-30 ("Signs, pictures, and voice itself can cross an 8–foot gap with ease.") ("[D]emonstrators with leaflets might easily stand on the sidewalk at entrances (without blocking the entrance) and, without physically approaching those who are entering the clinic, peacefully hand them leaflets as they pass by").

---

[3] The statute in *Hill* made it unlawful for any person within 100 feet of a health care facility's entrance to knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person.

The *Hill* Court also found that providing bright-line rules, like buffer zones, to enforcement authorities "serve the interest in evenhanded application of the law" and are "unquestionably legitimate" interests. *Id.* at 715. The Supreme Court further held in *Hill* that "[a] bright-line prophylactic rule may be the best way to provide protection, and, at the same time, by offering clear guidance and avoiding subjectivity, to protect speech itself." *Id.* at 729.

Here, Metro Council determined that it had a substantial interest in protecting Louisville citizens, particularly vulnerable patients, entering and exiting healthcare facilities and that current ordinances were not effective. The Ordinance creates a small buffer zone, smaller than the one upheld in *Hill*, and thus is narrowly tailored to serve those government interests and does not violate Plaintiffs rights to free speech or freedom of assembly. It was also clear via the LMPD memorandum that officers were making judgment calls on whether to enforce existing ordinances for violation of protestors' First Amendment Rights. Providing LMPD with a "bright-line prophylactic rule" would eliminate that requirement and pressure and consequently protect everyone better as well as protect speech.

Plaintiffs, in their Motion for Temporary Restraining Order and Preliminary Injunction, rely heavily on the *McCullen*, 573, U.S. 464, case in which the statute at issue created a 35-foot buffer zone outside of abortion clinics. Because the buffer zone was so large, the *McCullen* Court found that it burdened more speech than necessary to achieve the government's interest. *See McCullen*, 573 U.S. 464. It is crucial to note, however, that before the enactment of the 35-foot buffer zone at issue in *McCullen*, the Massachusetts legislature enacted a 6-foot radius buffer zone modeled after the 8-foot radius buffer zone upheld in *Hill*, 530 U.S. 703. *See also, McCullen*, 573 U.S. at 470. The original 6-foot buffer zone was upheld by the First Circuit and denied review by the United States Supreme Court.

10

Here, the buffer zone created by the subject Ordinance is distinguishable from the buffer zone in *McCullen* and is more akin, if not less restrictive, than the buffer zone upheld in *Hill*. Moreover, many states are creating narrowly tailored buffer zones around healthcare and reproductive facilities that are being upheld by federal courts. Most recently and notably, the Third Circuit Court of Appeals upheld an almost identical buffer zone ordinance in New Jersey. *See Turco*, 935 F.3d 155; *see* City of Englewood Code §307-3, a copy of which is attached as **Exhibit I**. Buffer zones in Pennsylvania and Chicago were also recently upheld by the Third and Seventh Circuits, and on July 2, 2020, the U.S. Supreme Court denied certiorari in both cases, leaving the ordinances in full effect. *Bruni v. City of Pittburgh*, 941 F.3d 73 (3d Cir. 2019), cert. denied, 141 S.Ct. 578 (2021) (upheld 15 foot buffer zone ordinance); *Price*, 915 F.3d 1107, cert. denied, 141 S.Ct. 185 (2020) (upheld eight foot buffer bubble zone ordinance).

### iii. The Ordinance is Not Unconstitutionally Overbroad

Plaintiffs argue that the Ordinance is overbroad in that it creates a buffer zone restricting "half a city block" and that requires Plaintiffs to stand across the street. (*See* Pl's Memorandum pgs. 7-9). Other misrepresentations by Plaintiffs are made in in the Amended Complaint claiming the buffer zone takes up practically the entire block.  (DK 5, Amended Complaint at para. 34-37.) Despite Plaintiffs gross misrepresentations, the reality is that the Ordinance is one of the smallest buffer zones in the United States.  **Exhibits G and H** show the actual size of the buffer zone. Additionally, courts, including the Supreme Court, are reluctant to invalidate laws for overbreadth holding that it is a "'strong medicine' that is not to be 'casually employed.'" *United States v. Williams*, 553 U.S. 285, 293 (2008) (quoting *Los Angeles Police Dep't v. United Reporting Pub. Corp.,* 528 U.S. 32, 39 (1999)).

In *Hill*, 530 U.S. 703, the Supreme Court rejected plaintiffs' overbreadth challenge that 8-foot radius floating buffer zones at the entrances to healthcare facilities finding "the comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive." *Id.*, 530 U.S. at 731. The *Hill* Court differentiated general policy decisions made by governments from attempts to prevent unprotected speech only to inadvertently restrict protected speech stating that "it is not disputed that the regulation affects protected speech activity; the question is thus whether it is a "'reasonable restrictio[n] on the time, place, or manner of protected speech.'" *Id.* (quoting *Ward*, 491 U.S. at 791). Here, the Ordinance is not overbroad because it is a policy decision to protect everyone equally and affecting everyone equally by creating a reasonable, modest restriction to ensure public safety.

Moreover, Plaintiffs insist that because the EMW Center is next to another healthcare facility, that facility is also required to have a buffer zone, in effect, creating one large buffer zone. However, the Ordinance does not require healthcare facilities to establish buffer zones. The buffer zones must be requested by Public Works. *See* **Exhibit H.**  The healthcare facilities next to the EMW Center have not requested buffer zones per the Ordinance. Thus, despite Plaintiffs' unrealistic hypotheticals, the Ordinance has only been requested at the EMW Center given the unique and long history of violence and harassment at this location. The Supreme Court is clear that laws may only be invalidated if the overbreadth is substantial and a there is a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978); Parker v. Levy, 417 U.S. 733, 760–61, (1974)); *See also Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992) (listing cases).

Here, the buffer zone is relatively small and leaves ample room to be heard, seen and to pass leaflets. Therefore, the Ordinance does not "significantly compromise" or substantially burden Plaintiffs' First Amendment protections and, thus, the Ordinance is not overbroad. The Ordinance does not violate Plaintiffs' First Amendment rights.

iv. <u>The Ordinance Does Not Violate the Free Exercise Clause or KRS 446.350</u>

Metro's Ordinance is a valid and neutral law of general applicability and therefore its application to Plaintiffs must be upheld even when it is claimed that "the law proscribes (or prescribes) conduct that [Plaintiffs] religion prescribes (or proscribes)." *Employment Div. Dep't of Human Resources of Ore. V. Smith*, 494 U.S. 872, 879 (1990) (superseded by statute) (quoting *United States v. Lee*, 455 U.S. 252, 262, n.3, 102 S.Ct. 1051 (1982) (Stevens, J., concurring judgment). Plaintiffs claim the Ordinance violates their right to practice religion, but the ordinance is content-neutral and narrowly tailored, thus it does not violate Plaintiff's freedom of religion. Further, KRS 446.350, Kentucky's Religious Freedom Restoration Act, is not violated. Plaintiffs freedom of religion has not been substantially burdened, and there is a compelling government interest involved and the least restrictive means has been used to further the government's interest. Plaintiffs have not proven by clear and convincing evidence that it has shown the required elements necessary to violate Kentucky's Freedom of Restoration Act.

2. PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE INJURY

Plaintiffs allege Metro's Ordinance violates their First Amendment rights and other constitutional rights, both facially and as applied, by preventing Plaintiffs from walking alongside of people entering and exiting healthcare facilities. Plaintiffs also allege the Ordinance violates their right to assemble, freedom of religion and KRS 446.350. Plaintiffs allege these violations

will lead to abortions, which are legal, that they could have prevented and thus entitles them to injunctive relief.

However, Plaintiffs fail to show an actual injury or imminent injury with proper causation under the Ordinance for their allegations.   Further, Plaintiffs have not shown a violation or substantial burden of any constitutional or other right.  Plaintiffs allege the Ordinance will limit Plaintiffs ability to reach patients entering and exiting the healthcare facilities and thus their ability to prevent legal abortions. Courts have already upheld that ordinances of this size and larger do not substantially restrict a speaker's ability to be heard, but it does protect unwilling listeners. *Hill*, 530 U.S. at 716. Plaintiffs have not provided any evidence that the Ordinance will have effects on willing listeners since Plaintiffs can still be seen, heard and distribute leaflets. Further Plaintiffs have provided zero evidence that walking alongside a patient entering a healthcare facility is productive. In fact, the legislative record suggests that patients view this as stalking and harassment.

Plaintiffs cannot demonstrate irreparable injury. Plaintiffs are merely speculating as to the effects of the buffer zone. Irreparable injury is characterized as both "certain and great." *See City of Benton Harbor v. Richardson*, 429 F.Supp. 1096 1101 (W.D. Mi. 1977); *see also Maryville Baptist Church, Inc. v. Beshear*, 455 F.Supp.3d 342, 344 (W.D. Ky. 2020). The Ordinance does not substantially burden Plaintiffs' right to act on a religious belief.

3. THE REMAINING ELEMENTS FOR INJUNCTIVE RELIEF CANNOT BE SATISFIED.

The third factor the court must look to when considering a Motion for Preliminary Injunction is whether injunction may cause substantial harm to others. *American Civil Liberties Union of Michigan v. National Security Agency/Central Security Service*, 467 F.3d 590, 591 (6th Cir. 2002).  *See also Maryville Baptist Church, Inc.*, 455 F.Supp.3d at 344-46.  In arguments

addressing the merits of Plaintiffs' claims, it is clearly demonstrated that injunction opens doors for more harm to occur to patients entering and exiting healthcare facilities. Plaintiffs have already stated that they refuse to abide by the Ordinance and intend to violate it regularly. If granted injunctive relief, Plaintiffs and protestors, specifically right-wing protestors, will feel more empowered than ever to continue the harassment, assaults, stalking and intimidation of patients. This would amount to substantial harm to others.

In a similar way, injunction would not satisfy the forth and final element of the remedy, whether injunction would serve the public interest. *Id*. It goes without saying that stalking, harassment, assault and intimidation against vulnerable individuals does not serve the public interests.

## VIII.  CONCLUSION

To prevail on a Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiffs must not only show a reasonable likelihood of success but also that it is more likely than not that they will suffer irreparable harm without an injunction. Here, Plaintiffs' constitutional rights are not being violated. Plaintiffs misrepresent the facts and speculate that their inability to walk along side of patients entering healthcare facilities rather than talk to patients outside of the buffer zone or talk to patients from a few feet away will cause more abortions which goes against the Plaintiffs' religion. However, there is no present injury as the subject Ordinance has not yet been implemented and the buffer zone lines have not been layed.  The Ordinance is currently not enforced.  Nor have Plaintiffs provided any evidence proving future harm. Plaintiffs have not met the requisites to obtain a temporary restraining order or preliminary injunction. Plaintiffs also have not shown the likelihood of success on the merits or the public interest would favor granting an injunction here. Therefore, their Emergency Motion should be denied.

For the reasons stated herein, Defendants, Metro Government, Mayor Greg Fischer, Chief Ericka Shields and Mike O'Connell, respectfully request this Court deny Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

BY:    /s/ Natalie Johnson
       NATALIE JOHNSON
       JOHN F. CARROLL
       Assistant County Attorneys
       First Trust Centre
       200 S. 5th St. Suite 200N
       Louisville, KY  40202
       Phone: (502) 574-4307
       Natalie.johnson@louisvilleky.gov
       John.Carroll2@louisvilleky.gov
       *Counsel for Defendants,*
       *Louisville/Jefferson County Metro Government,*
       *Mayor Greg Fischer, Metro Police Chief Erika*
       *Shields and Mike O'Connell*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction with tendered Order was served via the Court's CM/ECF system on the 18th day of June 2021, to:

Christopher Wiest                          Thomas Bruns
Chris Wiest, Atty at Law, PLLC            4750 Ashwood Dr. Ste, 200
25 Town Center Blvd, Ste 104             Cincinnati, OH 45241
Crestview Hills, KY 41017                 tbruns@bcvalaw.com
chris@cwiestlaw.com

      /s/ Natalie Johnson
      NATALIE JOHNSON