**THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
*Electronically Filed*

**SISTERS FOR LIFE, INC., et al.,**                                                      **PLAINTIFFS**

**v.**                                                                                              **Case No. 3:21-cv-00367-RGJ**

**LOUISVILLE/JEFFERSON COUNTY**
**METRO GOVERNMENT, et al.,**                                                    **DEFENDANTS**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS**

**\*\*\*\*\*\*\*\*\*\*\*\*\***

The Defendants, Louisville/Jefferson County Metro Government, Mayor Greg Fischer, Chief Erika Shields and Jefferson County Attorney Mike O'Connell (collectively "Defendants"), by counsel, for their Memorandum in Support of Defendants' Motion to Dismiss, submit the following:

**I. FACTS**

On May 20, 2021, the Louisville/Jefferson County Metro Council ("Metro Council") passed ordinance O-179-21 (the "Ordinance") amending the Louisville Metro Code of Ordinances ("LMCO") to "ensure safe, unobstructed entry to and exit from a healthcare facility." (*See* O-179-21 attached as **Exhibit A**). On June 6, 2021, Plaintiffs, Sisters for Life, Inc. and Angela Minter, filed a Complaint against Defendants. (DK1, Complaint.) On June 7, 2021, Plaintiffs filed an Amended Complaint adding Kentucky Right to Life Association, Inc. as a Plaintiff. (DK 5, Amended Complaint.)

Plaintiffs allege in the Complaint and Amended Complaint that the Ordinance violates their First Amendment Rights of free speech, freedom of assembly and freedom of religion and violates KRS 446.350, the Kentucky Religious Freedom Restoration Act. These allegations stem from the

1

Ordinance's creation of a buffer zone which Plaintiffs allege will prevent them from "efforts to engage women and hand them literature, walk alongside and talk to women headed towards the clinic who, presumably, want to procure an abortion, and pray for the women who start to enter the abortion clinic." (DK 5, Amended Complaint para. 17).

Specifically, Plaintiffs allege in the Amended Complaint in Count I, a claim that Defendants violate 42 U.S.C. Section 1983 for a violation Plaintiffs' First Amendment rights – Freedom of Speech. In Count II, Plaintiffs allege a violation of 42 U.S.C. Section 1983 for a violation of the First Amendment – Freedom of Assembly. In Count III, Plaintiffs allege a violation of 42 U.S.C. Section 1983 for a violation of their rights to free exercise of religion. Count IV alleges a violation of KRS 446.350, the Kentucky Freedom Restoration Act claiming Defendants have substantially violated their freedom of religion. Plaintiffs seek a declaratory judgment and injunctive relief for the alleged violations. (DK 5, Amended Complaint.)

Plaintiffs allege that the subject Ordinance is "remarkable in both its overbreadth and scope." (DK 5, Amended Complaint para. 25). Plaintiffs also claim the Ordinance will create a buffer zone, outside of the EMW Women's Surgical Center ("EMW Center") that covers "half a city block of sidewalk." (DK 5, Amended Complaint para. 29). Plaintiffs further claim a buffer zone with exist "that practically completely envelopes the entire city block." (DK 5, Amended Complaint, para. 32, 35.)

The Ordinance states in relevant part that:

> No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a 'buffer zone' on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and 10 feet from side to side, during the facility's posted business hours, except:
>
>     (a)    persons entering or leaving such facility;

2

>> (b) persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility; or
>
> (c) law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; or
>
> (d) employees or agents of such facility acting within the scope of their employment.

"Entrance" is defined as

> [A]ny door to a healthcare facility that directly abuts the public sidewalk; provided, however, that if the door does not directly abut the public sidewalk the 'entrance' shall be the point at which the public sidewalk intersects with a pathway leading to the door.

The buffer zone created by the Ordinance is one of the smallest buffer zones that currently exists in the United States. It only extends five feet in both directions from the entrance to a healthcare facility and runs perpendicularly ending at the sidewalk curb. (*See* Photos of Demarcation Lines at EMW created by Public Works, attached as **Exhibit B**; *see also*, Affidavit of Jeffrey Brown with sub-exhibits as **Exhibit C**.) Moreover, the Ordinance mandates that a healthcare facility *request* the demarcation of a buffer zone by Louisville Metro Department of Public Works ("Public Works"). (*See* O-179-21, **Exhibit A** ("The Department of Public Works shall, **at the request** of a healthcare facility, paint or lay on the public way or sidewalk two easily-distinguishable demarcation lines…")) A buffer zone is not created automatically, nor can a healthcare facility create a buffer zone themselves. It must be requested through Public Works. (*See* Affidavit of Jeffrey Brown, **Exhibit C** with sub-exhibits). This has not been requested.

Provided herewith as **Exhibit D** is a copy of Legislative Record FOR Metro's subject Ordinance.

## II. STANDARD OF REVIEW

A complaint should be dismissed for failing to state a claim for which relief can be granted when it appears beyond doubt that the complaint sets forth no set of facts, which if proved, would entitle the plaintiff to relief. Federal Rule of Civil Procedure 12(b)(6). In deciding whether to dismiss a complaint for failing to state a claim for which relief can be granted, the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Dauenhauer v. Bank of New York Mellon*, 562 Fed.Appx. 473, 477 (6th Cir. 2014); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint "must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir.2014). Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

Pursuant to Rule 12(d) when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). However, courts have made a narrow exception to this rule and permit a district court to take judicial notice of matters of public record, such as the record provided herewith as **Exhibit D**, without converting a motion for failure to state a claim into a motion for summary judgment. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080-1081 (7th Cir. 1997) (listing cases where exception is used). This exception has allowed courts to avoid unnecessary proceedings. *Id*.

Here, Defendants urge the court to examine the evidence presented and treat this Motion as a Motion for Summary Judgement. In the alternative, Defendant's ask the Court to take judicial notice of the evidence and treat this Motion as a Motion to Dismiss. Defendants respectfully request the Court to examine the evidence presented because of Plaintiffs' serious misrepresentation of the facts regarding the Ordinance and the resulting buffer zone. Further, a District Court is entitled to take judicial notice of legislative records that are also public records. *Sensations, Inc. v. City of Grand Rapids*, 2006 WL 5779504 at *3 (W.D. Mich. Oct. 23, 2006), aff'd, 526 F.3d 291 (6th Cir. 2008) (listing similar cases).

The evidence presented by Defendants is part of a larger, legislative record that was incorporated into the Ordinance and is of public record. The evidence is highly important because not only does it refute Plaintiffs' misrepresentations, it speaks to the significant government interest in passing the Ordinance. Additionally, the evidence conveys the size of the buffer zone created by the Ordinance under a plain reading of the Ordinal language which is relevant and highly important and relevant to this issue.

If this motion is converted to one for summary judgment, then Fed. R. Civ. P. 56 applies as the applicable standard.

### III. ARGUMENT

**1. Summary of Argument.**

The Ordinance does not violate or substantially burden any of Plaintiffs' constitutional rights. The Ordinance creates time, place and manner restrictions on speech outside of healthcare facilities to ensure the safety of patients entering and exiting such facilities and to provide enforcement officers with bright-line rules which are both significant and legitimate government

5

interests. Because the Ordinance is content-neutral, it is reviewed under an intermediate scrutiny standard, thus it must be narrowly tailored to achieve a significant government interest.

Here, the Ordinance meets the intermediate scrutiny standard and it does not substantially burden the Plaintiffs rights while helping to achieve the government's important and compelling interest in protecting its citizens, particularly vulnerable citizens, from assault, harassment, stalking and intimidation. Further, the Ordinance is not overbroad because it restricts all people equally regarding the time, place and manner of activity and speech outside of healthcare clinics. As a result, all of Plaintiffs' claims alleged in the Amended Complaint should be dismissed.

**2. The Ordinance is Content-Neutral.**

Content neutral restrictions regulate the time, place and manner of speech, but not the content of speech. Here, the Ordinance does not attempt to regulate the content of any individual's speech, but rather aims to regulate the time, place and manner of the individual's speech to ensure patients can enter and exit healthcare facilities safely. Although Plaintiffs argue that the Ordinance allows escorts to "offer encouragement of those seeking to obtain an abortion," this is untrue. (See DK 5, Amended Complaint para. 44).

The plain language of the Ordinance states that agents, or escorts in this situation, can only be in the buffer zone if "acting within the scope of their employment." Encouraging abortions is not within the scope of an escort's job duties. Their job is to assist patients with safe passage to and from the healthcare facility because of the harassment, intimidation and assaults by the protestors. In fact, a buffer zone may eliminate the need for escorts all together. Further, if escorts are having pro-abortion discussions with patients in the buffer zone, that escort would be in violation of the Ordinance and subject to the same penalties as anyone one else. Thus, the Ordinance is content-neutral because it applies equally to everyone, including escorts.

Because the Ordinance is content-neutral it is subject to intermediate scrutiny. *See generally*, *Hill v. Colorado*, 530 U.S. 703 (2000). In fact, courts typically hold that buffer zone laws are content neutral. *See e.g., Id.*; *see also McCullen v. Coakley*, 573 U.S. 464, 478-80 (2014); *Turco v. City of Englewood, New Jersey*, 935 F.3d 155, 162 (3d Cir. 2019); *see also Price v. City of Chicago*, 915 F.3d 1107, 1111 (7th Cir. 2019), cert. denied sub nom. *Price v. City of Chicago, Illinois,* 141 S. Ct. 185, 207 L. Ed. 2d 1116 (2020). Content-neutral restriction are reviewed by courts under an intermediate scrutiny standard and must be "narrowly tailored to serve a significant government interest." *McCullen*, 573 U.S. at 486 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989)).

**3. The Ordinance Serves a Significant and Compelling Government Interest.**

Louisville/Jefferson County has had a long history of anti-abortion protests. The protests outside of the EMW Women's Surgical Center ("EMW Center") are distinct because the EMW Center is one of the only clinics in Kentucky that provides abortion services.[1] Because it is one of the only providers, the clinic consistently has presence from out of town protestors as well as local protestors. The protestors regularly harass, stalk, intimidate and assault patients entering and exiting the clinic. Monthly reports from the EMW Center indicate that just between January 2021 and March 2021, there have been a total of at least 1,447 reported protestors outside of the EMW Center with about 23 protestors on any given day. (*See* **Exhibit D,** copy of 2021 NAF Monthly Violence and Disruption Report ("NAF Report") as part of the Legislative Record).

These reports indicate a pattern of obstruction, trespassing, assault and stalking and demonstrate the frequency in which the Louisville Metro Police Department ("LMPD") is contacted. (*See* NAF Report). Video evidence from March 6, 2021 shows a protestor grabbing a

---

[1] Planned Parenthood in Louisville recently became Kentucky's second clinic authorized to provide abortion services.

7

patient and dragging them away from the healthcare facility entrance. (*See* **Exhibit D** link to Video Evidence   https://drive.google.com/file/d/1S8oM1gYCUfRBdTcnvaVEXIKVWz7ZfMdP/view. as part of the Legislative Record). This video evidence also shows patients begin stalked, harassed, touched and intimidated. (*See* Video). These are not one-off occurrences. These are occurrences that happen on a regular basis outside of the clinic.

Additionally, a study of nine (9) reproductive health clinics in Ohio, Kentucky and West Virginia conducted by the Ohio Policy Evaluation Network (OPEN) found that more than 50% of patients from the EMW Center reported protestors as a challenge to receiving healthcare; this is three times the average for the other eight clinics combined. (*See* **Exhibit D,** OPEN Study Protest Report as part of the Legislative Record). Testimony from certified anesthesiologist Margorie Fitzgerald on April 28, 2021, discussed the effects of these protestors on patients' vital signs revealing that EMW patients routinely have "abnormal vital signs" and their blood pressure and heart rates are "that seen in a patient having a panic attack" which would "add risk to a medical procedure." (*See* **Exhibit D**, Margorie Fitzgerald testimony as part of the Legislative Record).

Further, memorandum from Louisville's Metro Police Department ("LMPD") indicates that when incidents outside of the EMW Center occur, officers are required to make judgment calls on whether enforcing existing ordinances or laws would violate the protestor's First Amendment rights. (*See* **Exhibit D**, LMPD Memorandum from March 24, 2021 as part of the Legislative Record).

In *Hill*, the Supreme Court recognized that patients entering and exiting health care facilities "are often in particularly vulnerable physical and emotional conditions" and "protecting these persons from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach" is a substantial and legitimate

interest. 503 U.S. at 729. Moreover, the *Hill* Court found that deference must be given to a legislature's judgment when determining such interests. *Id*. 704; see also *Turco,* 935 F.3d at 171 ("This principle is well-established in First Amendment jurisprudence, and we are mindful of our duty to 'accord a measure of deference to the judgment' of Englewood city council" citing *Hill,* 530 U.S. at 704).

The *Hill* Court also found that providing bright-line rules, like buffer zones, to enforcement authorities "serve the interest in evenhanded application of the law" and are "unquestionably legitimate" interests. *Id*. at 715. The Supreme Court further held in *Hill* that "[a] bright-line prophylactic rule may be the best way to provide protection, and, at the same time, by offering clear guidance and avoiding subjectivity, to protect speech itself." *Id.* at 729.

The subject Ordinance was passed because Metro Council determined, after hearing and seeing all of the evidence, that a legitimate and significant government interest existed to protecting Louisville citizens, particularly vulnerable patients, entering and exiting healthcare facilities and that current ordinances were not effective. Additionally, it was clear via the LMPD memorandum that officers were making judgment calls on whether to enforce existing ordinances for violation of protestors' First Amendment Rights. Providing LMPD with a "bright-line prophylactic rule" would eliminate that requirement and pressure and consequently protect everyone better as well as protect speech.

**4. The Ordinance is Narrowly Tailored.**

The narrowly tailored requirement is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Here, although an ordinance already exists to prevent sidewalk obstruction, as Plaintiffs mention, it is

9

clear the ordinance is ineffective. (*See* **Exhibit D**). Moreover, the United States Supreme Court held that 'we have emphasized on more than one occasion, when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill,* 530 U.S. at 726.

Additionally, the *Hill* Court found that an 8-foot radius[2] buffer zone outside of healthcare facilities left ample room to communicate a message through speech with little interference on that speaker's ability to communicate. *Id.* at 729-30 ("Signs, pictures, and voice itself can cross an 8–foot gap with ease.") ("[D]emonstrators with leaflets might easily stand on the sidewalk at entrances (without blocking the entrance) and, without physically approaching those who are entering the clinic, peacefully hand them leaflets as they pass by").

Here, the Ordinance creates one of the smallest buffer zones in the United States and burdens very minimal speech. The Ordinance creates a small buffer zone, smaller than the one upheld in *Hill*, that extends ten feet from the entrance of a healthcare facility. Thus, if a person is walking directly in the middle of the buffer zone, Plaintiffs would be, at most, five feet away from the person entering the facility. Certainly, Plaintiffs can be seen, heard and distribute pamphlets from 10 feet away. Plaintiffs allege an absolute right to "evangelize" in a person's face as they enter a healthcare facility. This right does not exist and any burden on Plaintiffs' speech is minimal, thus the Ordinance is narrowly tailored.

Plaintiffs, in their Amended Complaint, rely heavily on *McCullen*, 573, U.S. 464, a case in which the statute at issue created a 35-foot buffer zone outside of abortion clinics. Because the

---

[2] The statute in *Hill* made it unlawful for any person within 100 feet of a health care facility's entrance to knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person.

buffer zone was so large, the *McCullen* Court found that it burdened more speech than necessary to achieve the government's interest. *See McCullen*, 573 U.S. 464. It is crucial to note, however, that before the enactment of the 35-foot buffer zone at issue in *McCullen*, the Massachusetts legislature enacted a 6-foot radius buffer zone modeled after the 8-foot radius buffer zone upheld in *Hill*, 530 U.S. 703. *See also, McCullen*, 573 U.S. at 470. The original 6-foot buffer zone was upheld by the First Circuit and denied review by the United States Supreme Court.

Here, the buffer zone created by the subject Ordinance is distinguishable from the buffer zone in *McCullen* and is more akin, if not less restrictive, than the buffer zone upheld in *Hill*. Moreover, many states and cities are creating narrowly tailored buffer zones around healthcare and reproductive facilities that are being upheld by federal courts. Most recently and notably, the Third Circuit Court of Appeals upheld an almost identical buffer zone ordinance in New Jersey. *See Turco*, 935 F.3d 155; *see* City of Englewood Code §307-3, a copy of which is attached as **Exhibit E**. Buffer zones in Pennsylvania and Chicago were also recently upheld by the Third and Seventh Circuits, and on July 2, 2020, the U.S. Supreme Court denied certiorari in both cases, leaving the ordinances in full effect. *Bruni v. City of Pittsburgh*, 941 F.3d 73 (3d Cir. 2019), cert. denied, 141 S.Ct. 578 (2021) (upheld 15-foot buffer zone ordinance); *Price*, 915 F.3d 1107, cert. denied, 141 S.Ct. 185 (2020) (upheld eight-foot buffer bubble zone ordinance).

**5. The Ordinance is Not Unconstitutionally Overbroad.**

Plaintiffs argue that the Ordinance is overbroad in that it creates a buffer zone restricting "half a city block" and that requires Plaintiffs to stand across the street. (DK 5, Amended Complaint para. 29). Other misrepresentations by Plaintiffs are made in in the Amended Complaint claiming the buffer zone takes up practically the entire block. (DK 5, Amended Complaint at para. 34-37.) Despite Plaintiffs gross misrepresentations, the reality is that the Ordinance is one of the

smallest buffer zones in the United States. **Exhibit B**, and the sub-exhibits to **Exhibit C** show the actual size of the buffer zone. Additionally, courts, including the Supreme Court, are reluctant to invalidate laws for overbreadth holding that it is a "'strong medicine' that is not to be 'casually employed.'" *United States v. Williams*, 553 U.S. 285, 293 (2008) (quoting *Los Angeles Police Dep't v. United Reporting Pub. Corp.,* 528 U.S. 32, 39 (1999)).

In *Hill*, 530 U.S. 703, the Supreme Court rejected plaintiffs' overbreadth challenge that 8-foot radius floating buffer zones at the entrances to healthcare facilities finding "the comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive." *Id.*, 530 U.S. at 731. The *Hill* Court differentiated general policy decisions made by governments from attempts to prevent unprotected speech only to inadvertently restrict protected speech stating that "it is not disputed that the regulation affects protected speech activity; the question is thus whether it is a "'reasonable restrictio[n] on the time, place, or manner of protected speech.'" *Id*. (quoting *Ward*, 491 U.S. at 791).  Here, the Ordinance is not overbroad because it is a policy decision to protect everyone equally and affecting everyone equally by creating a reasonable, modest restriction to ensure public safety.

Moreover, Plaintiffs insist that because the EMW Center is next to another healthcare facility, that facility is also required to have a buffer zone, in effect, creating one large buffer zone. However, the Ordinance does not require healthcare facilities to establish buffer zones. The buffer zones must be requested by Public Works. (*See* **Exhibit A**; *see also* **Exhibit C**).  The healthcare facilities next to the EMW Center have not requested buffer zones per the Ordinance. Thus, despite Plaintiffs' unrealistic hypotheticals, the Ordinance has only been requested at the EMW Center given the unique and long history of violence and harassment at this location. The Supreme Court is clear that laws may only be invalidated if the overbreadth is substantial and a there is a "realistic

danger that the statute itself will significantly compromise recognized First Amendment protections." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975); *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447 (1978); Parker v. Levy, 417 U.S. 733, 760–61, (1974)); *See also Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992) (listing cases).

Here, the buffer zone is relatively small and leaves ample room to be heard, seen and to pass leaflets. Therefore, the Ordinance does not "significantly compromise" or substantially burden Plaintiffs' First Amendment protections and, thus, the Ordinance is not overbroad. The Ordinance does not violate Plaintiffs' First Amendment rights. Additionally, while Plaintiffs have alleged in Counts I through III causes of action under 42 U.S.C. §1983, a federal cause of action alleged under this section simply does not arise from every wrong which is alleged under this section simply does not arise from every wrong which is alleged committed under color of state law. *Studen v. Beebe*, 583 F.2d 560, 566 (6th Cir. 1978) (internal citations omitted.) Here, the minimal time, place and other restrictions present with respect to the buffer zone do not rise to the level required for a 42 U.S.C. §1983 claim. Any restriction of Plaintiffs' speech, freedom of assembly, and free exercise of religion are minimal and justified by the government's interest in the subject Ordinance. Therefore, Plaintiffs' claims alleged in Counts I through III of the Amended Complaint should be dismissed for failure to state a claim or alternatively dismissed as a matter of law.

**6. The Ordinance Does Not Substantially Burden Plaintiffs' Religious Freedom.**

Metro's Ordinance is a valid and neutral law of general applicability and therefore its application to Plaintiffs must be upheld even when it is claimed that "the law proscribes (or prescribes) conduct that [Plaintiffs] religion prescribes (or proscribes)." *Employment Div. Dep't of*

*Human Resources of Ore. V. Smith*, 494 U.S. 872, 879 (1990) (superseded by statute) (quoting United States v. Lee, 455 U.S. 252, 262, n.3, 102 S.Ct. 1051 (1982) (Stevens, J., concurring judgment). Plaintiffs claim the Ordinance violates their right to practice religion, but the ordinance is content-neutral and narrowly tailored, thus it does not violate Plaintiff's freedom of religion. Plaintiffs alleged violation of Kentucky's Religious Freedom Restoration Act in Count IV of the Amended Complaint has no validity.

Further, KRS 446.350, Kentucky's Religious Freedom Restoration Act, is not violated. In pertinent part, the statute reads "Government shall not **substantially burden** a person's freedom of religion." Ky. Rev. Stat. §446.350. Here, as previously noted, courts, including the United States Supreme Court, have found that buffer zones, including buffer zones more restrictive than the one at issue, do not substantially burden Plaintiffs' rights. See e.g., *Hill*, 530 U.S. 703 (2000). Moreover, the Sixth Circuit held that "a generally applicable law that incidentally burdens religious practices usually will be upheld." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 614 (6th Cir. 2020) (citing *Smith*, 494 U.S. at 878–79, 110 S.Ct. 1595; *New Doe Child #1 v. Congress of the United States*, 891 F.3d 578, 591–93 (6th Cir. 2018)).

Here, the Ordinance creates a "generally applicable law that incidentally burdens religious practices." The Ordinance is distinguishable from the issue is *Maryville* because in that case, an Executive Order was prohibiting drive-thru church services but allowed the operation of laundromats, law firms, and hardware stores, etc., which the Court found arbitrary and thus violated the Plaintiffs rights. The Ordinance treats everyone equally and does not provide for arbitrary allowances or exemptions.

As a result, Count IV of the Amended Complaint should be dismissed for failure to state a claim of relief or alternatively dismissed as a matter of law. The government has a substantial and

compelling interest here and based upon the record evidence, there is clear and convincing evidence involved here to protect its citizens.

## **CONCLUSION**

The plain language of the Ordinance creates a small buffer zone which must be requested by a healthcare facility. Because the buffer zone is modest and only created through request, the Ordinance does not substantially burden Plaintiffs' constitutional rights, and in fact, only places a very minimal burden on Plaintiffs' right to pass leaflets. Plaintiffs do not have an absolute right to "minister" or "evangelize" in someone's face as they enter a healthcare facility. However, the government here does have a significant interest in protecting people entering healthcare facilities from assault, harassment, stalking and intimidation. Because the interest is legitimate and significant, and the Ordinance does not substantially burden the Plaintiff's constitutional rights, Defendants should be granted Summary Judgment in their favor dismissing Plaintiffs claims as a matter of law.  Alternatively, Plaintiffs' Amended Complaint should be dismissed for failure to state a claim.

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

BY: __/s/ Natalie Johnson_____
  NATALIE JOHNSON
  JOHN F. CARROLL
  Assistant County Attorneys
  First Trust Centre
  200 S. 5th St. Suite 200N
  Louisville, KY  40202
  Phone: (502) 574-4307
  Natalie.johnson@louisvilleky.gov
  John.Carroll2@louisvilleky.gov
  *Counsel for Defendants,*

*Louisville/Jefferson County Metro Government, Mayor Greg Fischer, Metro Police Chief Erika Shields and Mike O'Connell*

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing Defendants' Memorandum in Support of Motion to Dismiss with tendered Order was served via the Court's CM/ECF system and/or by U.S. Mail on the 18th day of June 2021, to:

Christopher Wiest
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Ste 104
Crestview Hills, KY 41017
chris@cwiestlaw.com

Thomas Bruns
4750 Ashwood Dr. Ste, 200
Cincinnati, OH 45241
tbruns@bcvalaw.com


   /s/ Natalie Johnson_____
NATALIE JOHNSON