**THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
*Electronically Filed*

**SISTERS FOR LIFE, INC., et al.,**                                                                    **PLAINTIFFS**

**v.**                                                                                      **Case No. 3:21-cv-00367-RGJ**

**LOUISVILLE/JEFFERSON COUNTY**
**METRO GOVERNMENT, et al.,**                                                           **DEFENDANTS**

<u>**DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**</u>

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

The Defendants, Louisville/Jefferson County Metro Government ("Metro"), Mayor Greg Fischer, Chief Erika Shields and Jefferson County Attorney Mike O'Connell (collectively "Defendants"), by counsel, for their Reply to Plaintiffs' Memorandum in Opposition of Defendants' Motion to Dismiss (DK 15) (hereinafter "Plaintiffs' Memorandum"), submit the following:

**I.       RESPONSE TO PLAINTIFF'S FACTS**

In Plaintiffs' Memorandum, they continue to cite the Amended Complaint as being required to be considered in the most favorable light to the Plaintiffs. On May 20, 2021, the Louisville/Jefferson County Metro Council ("Metro Council") passed ordinance O-179-21 (the "Ordinance") amending the Louisville Metro Code of Ordinances ("LMCO") to "ensure safe, unobstructed entry to and exit from a healthcare facility." (*See* DK 11, Defendant's Motion to Dismiss **Exhibit A**). The Ordinance was passed by Metro Council because the legislature believed that there was a legitimate and significant government interest in ensuring safe, unobstructed entry to and from healthcare facilities by allowing health care facilities to establish buffer zones.

Metro Council based this significant government interest on testimony from, but not limited to, doctors, patients, sidewalk counselors, lawyers, clergy, pro-life advocates, and EMW clinic volunteers. They reviewed video footage from outside the EMW Clinic, interviews with the protestors and sidewalk counselors,

1

LMPD Memorandum, LMPD call logs, and monthly violence and disruption reports. Metro Council read about the ongoing threats of violence to patients and workers outside of the clinic, including threats of gun violence and firebombs. They read about the negative health affects the protestors' behaviors have on patients. This evidence and more are part of the legislative record, a public record, and speaks to Metro Government's significant interest in allowing health care facilities to create buffer zones for safe entry and exit.

Plaintiffs' Amended Complaint, filed on June 7th, 2021, alleges the Ordinance violates their First Amendment freedoms of speech, assembly and religion, as well as the Kentucky Religious Freedom Restoration Act. (DK 5, Amended Complaint). Plaintiffs maintain these allegations in their Response to Defendants' Motion to Dismiss.

The Ordinance states in pertinent part that:

> No person shall knowingly enter, remain on, or create any obstruction within the driveway of a healthcare facility or within a 'buffer zone' on the public way or sidewalk extending from the entrance of a healthcare facility to the closest adjacent sidewalk curb and 10 feet from side to side, during the facility's posted business hours, except:
>
> (a) persons entering or leaving such facility;
>
> (b) persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility; or
>
> (c) law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; or
>
> (d) employees or agents of such facility acting within the scope of their employment.

"Entrance" is defined as

> [A]ny door to a healthcare facility that directly abuts the public sidewalk; provided, however, that if the door does not directly abut the public sidewalk the 'entrance' shall be the point at which the public sidewalk intersects with a pathway leading to the door.

Although Plaintiffs' gross misrepresentation of the Ordinance depicts the buffer zone as covering "an entire city block," the buffer zone created by the Ordinance is one of the smallest buffer zones that currently exists in the United States. It only extends five feet in both directions from the entrance to a healthcare facility and runs perpendicularly ending at the sidewalk curb. (*See* DK 11, Motion to Dismiss, **Exhibit B** and **Exhibit C**).

Plaintiffs also allege that the subject Ordinance automatically creates buffer zones outside of every health care facility regardless of whether the facility has requested a buffer zone. This is simply not true:

1. Section (B)(2) of the Ordinance prohibits a person from knowingly entering, remaining on or creating any obstruction within a buffer zone. However, a buffer zone is created via Section (C) which states "[t]he Department of Public Works shall, **at the request** of a healthcare facility, paint or lay on the public way or sidewalk two easily-distinguishable demarcation lines…" (emphasis added).

2. Section (D) states "the Louisville Department of Public Health and Wellness shall solicit information from any health care facility **that requested the demarcation line as described in this section regarding the efficacy of the "buffer" zone** in allowing patients and staff to enter and exit the facility safely." (emphasis added).

3. Section (E) states "Any health care facility that **requests that the Louisville Department of Public Works paint or lay demarcation lines** as described in subsection (C)(1), shall monitor during its hours of operation **the "buffer" zone created by the demarcation lines**…" (emphasis added).

The plain language of the ordinance is clear and unambiguous: A buffer zone is not created automatically, nor can a healthcare facility create a buffer zone themselves. It must be requested through Public Works. (*See* DK 11, **Exhibit C** with sub-exhibits). No other health care facility has requested a buffer zone.

Plaintiffs attempt to depict a very different scenario outside of the EMW clinic and a very different ordinance than that was a passed by Metro Council. Plaintiffs illustrations lack any foundation of reality. Defendants urge this Court to review the evidence presented and legislative record and to review the language of the Ordinance as well as other buffer zone legislation Defendants present.

The record, Ordinance and statutes speak for themselves and are highly important because not only do they refute Plaintiffs' misrepresentation, they speak to the significant government interest in passing the subject Ordinance. The evidence also conveys the size and implementation of the buffer zone created by the Ordinance under a plain reading of the ordinal language which is highly relevant to this issue.

Defendants also urge the court to examine the evidence presented and treat this Motion as a Motion for Summary Judgement. In the alternative, Defendants ask the Court to take judicial notice of the evidence and treat this Motion as a Motion to Dismiss. The Sixth Circuit has previously held that the legislative record of a city ordinance is not a "document outside the pleadings" and therefore, when considering the legislative record, a district court did not have to convert a motion to dismiss into a motion for summary judgment. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 296-97 (6th Cir. 2008). *See also United States v. Tuente Livestock*, 888 F.Supp. 1416, 1418 (S.D. Oh. 1995) (In considering 12(b)(6) motion to dismiss legislative history materials and reports may be considered as it is in the natural course of determining whether a statutory claim for relief is competently stated and where considering legislative history provides context.)

More importantly, the Sixth Circuit has held that allegations made in a complaint are not required to be taken as true if they are refuted by judicial notice. *Williams v. CitiMortgage, Inc.,* 498 F. App'x 532, 536 (6th Cir. 2012) (citing *In re Livent, Inc. Noteholders Secs. Litig.,* 151 F.Supp.2d 371, 405–06 (S.D.N.Y.2001) (""[A] court need not feel constrained to accept as truth […] that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."))

## II. ARGUMENT

1. **The Subject Ordinance Should Be Upheld.**

    A.      **Summary of Argument.**

The Ordinance does not violate or substantially burden any of Plaintiffs' constitutional rights. The Ordinance creates time, place and manner restrictions on speech and assembly outside of healthcare facilities to ensure the safety of patients entering and exiting such facilities and to provide enforcement officers with bright-line rules which are both significant and legitimate government interests. Because the Ordinance is content-neutral, it is reviewed under an intermediate scrutiny standard, thus it must be narrowly tailored to achieve a significant government interest.

Here, the Ordinance meets the intermediate scrutiny standard and it does not substantially burden the Plaintiffs' rights while helping to achieve the government's important and compelling interest in protecting its citizens, particularly vulnerable citizens, from assault, harassment, stalking and intimidation. Further, the Ordinance is not overbroad because it restricts all people equally regarding the time, place and manner of activity and speech outside of healthcare clinics.   As a result, all of Plaintiffs' claims alleged in the Amended Complaint should be dismissed.

**B.     The Ordinance is Content-Neutral.**

Content neutral restrictions regulate the time, place and manner of speech, but not the content of speech. "The principal inquiry in determining content neutrality [in speech cases] is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Clark v. Community for Creative Non*–Violence, 468 U.S. 288, 295 (1984). "The government's purpose is the controlling consideration." *Id*.  Here, the Ordinance does not attempt to regulate the content of any individual's speech, but rather aims to regulate the time, place and manner of the individual's speech. The government's purpose is to ensure patients can enter and exit healthcare facilities safely. Given the government's purpose, these are reasonable and constitutionally permissible restrictions on time, place or manner of protected speech.

Plaintiffs argue in their Memorandum that because the Ordinance makes several exceptions for secular purposes, it is as-applied viewpoint discrimination.  Plaintiffs' Memorandum at pp. 15-17. However,

"[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 491. Solely because the Ordinance makes few exceptions does not make it content based. The purpose is to keep patients, employees and protestors safe and provide a bright-line rule for enforcement officers all while protecting speech.

Plaintiffs also argue that the Ordinance allows escorts to "offer encouragement of those seeking to obtain an abortion." *See also* DK 5, Amended Complaint para. 44; DK 15, Plaintiffs' Memorandum at 8-9). However, this is untrue. The plain language of the Ordinance states that agents, or escorts in this situation, can only be in the buffer zone if "acting within the scope of their employment." Encouraging abortions is not within the scope of an escort's job duties. The escorts are there to **physically** protect patients by assisting them with safe passage to and from the healthcare facility because of the harassment, intimidation and assaults by the protestors. Moreover, what anyone was allowed to say in the past, is not relevant going forward. Once the Ordinance is in effect, if escorts do have pro-abortion discussions with patients in the buffer zone, that escort would be in violation of the Ordinance and subject to the same penalties as anyone one else. The Ordinance is content-neutral because it applies equally to everyone, including escorts and has the neutral propose of protecting people.

Because the Ordinance is content-neutral it is subject to intermediate scrutiny. *See generally*, *Hill v. Colorado*, 530 U.S. 703 (2000). The subject ordinance is narrowly tailored and serves a significant purpose and is reasonable. In fact, courts typically hold that buffer zone laws are content neutral. *See e.g., Id.*; *McCullen v. Coakley*, 573 U.S. 464, 478-80 (2014); *Turco v. City of Englewood, New Jersey*, 935 F.3d 155, 162 (3d Cir. 2019); *Price v. City of Chicago*, 915 F.3d 1107, 1111 (7th Cir. 2019), cert. denied sub nom. *Price v. City of Chicago, Illinois,* 141 S. Ct. 185, 207 L. Ed. 2d 1116 (2020). Content-neutral restrictions are reviewed by courts under an intermediate scrutiny standard and must be "narrowly tailored to serve a

significant government interest." *McCullen*, 573 U.S. at 486 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989)).

      **C.**      **The Ordinance Serves a Significant and Compelling Government Interest.**

Louisville has a long history of anti-abortion protests. Because the EMW clinic is one of the only providers, the clinic consistently has presence from out of town protestors as well as local protestors. The protestors regularly harass, stalk, intimidate and assault patients entering and exiting the clinic. Monthly reports from the EMW Center indicate that just between January 2021 and March 2021, there was a total of at least 1,447 reported protestors outside of the EMW Center with about 23 protestors on any given day. (*See* DK 11, **Exhibit D** copy of 2021 NAF Monthly Violence and Disruption Report ("NAF Report")).

These reports indicate a pattern of obstruction, trespassing, assault and stalking and demonstrate the frequency in which the Louisville Metro Police Department ("LMPD") is contacted. (*See* NAF Report). Video evidence from March 6, 2021 shows a protestor grabbing a patient and dragging them away from the healthcare facility entrance. (*See* DK 11, **Exhibit D,** link to Video Evidence https://drive.google.com/file/d/1S8oM1gYCUfRBdTcnvaVEXIKVWz7ZfMdP/view. as part of the Legislative Record). This video evidence also shows patients begin stalked, harassed, touched and intimidated. These are not one-off occurrences. These are occurrences that happen on a regular basis outside of the clinic.

Additionally, a study of nine (9) reproductive health clinics in Ohio, Kentucky and West Virginia conducted by the Ohio Policy Evaluation Network (OPEN) found that more than 50% of patients from the EMW Center reported protestors as a challenge to receiving healthcare; this is three times the average for the other eight clinics combined. (*See* DK 11, **Exhibit D,** OPEN Study Report). Testimony from certified anesthesiologist Margorie Fitzgerald on April 28, 2021, discussed the effects of these protestors on patients' vital signs revealing that EMW patients routinely have "abnormal vital signs" and their blood pressure and heart rates are "that seen in a patient having a panic attack" which would "add risk to a medical procedure." (*See* DK 11, **Exhibit D**, Margorie Fitzgerald testimony).

Further, the memorandum from Louisville's Metro Police Department ("LMPD") indicates that when incidents outside of the EMW Center occur, officers are required to make judgment calls on whether enforcing existing ordinances or laws would violate the protestor's First Amendment rights. (*See* DK 11, **Exhibit D**, LMPD Memorandum from March 24, 2021).

In *Hill*, 530 U.S. 703, the Supreme Court recognized that patients entering and exiting health care facilities "are often in particularly vulnerable physical and emotional conditions" and "protecting these persons from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach" is a substantial and legitimate interest. 503 U.S. at 729. Moreover, the *Hill* Court found that deference must be given to a legislature's judgment when determining such interests. *Id*. 704; see also *Turco,* 935 F.3d at 171 ("This principle is well-established in First Amendment jurisprudence, and we are mindful of our duty to 'accord a measure of deference to the judgment' of Englewood city council" citing *Hill,* 530 U.S. at 704).

The *Hill* Court also found that providing bright-line rules, like buffer zones, to enforcement authorities "serve the interest in evenhanded application of the law" and are "unquestionably legitimate" interests. *Id*. at 715. The Supreme Court further held in *Hill* that "[a] bright-line prophylactic rule may be the best way to provide protection, and, at the same time, by offering clear guidance and avoiding subjectivity, to protect speech itself." *Id.* at 729.

The subject Ordinance was passed because Metro Council determined, after hearing and seeing all of the evidence, that a legitimate and significant government interest existed in protecting Louisville citizens, particularly vulnerable patients, entering and exiting healthcare facilities and that current ordinances were not effective. Additionally, a review of LMPD memorandum shows that officers were making judgment calls on whether to enforce existing ordinances for violation of protestors' First Amendment Rights. Providing LMPD with a "bright-line prophylactic rule" would eliminate that requirement and pressure and consequently protect everyone, protestors and patients, better as well as protect speech.

### D. The Ordinance is Narrowly Tailored.

Plaintiffs claim the subject Ordinance is not narrowly tailored. (DK 15, Plaintiffs' Memorandum at 17-24). The narrowly tailored requirement is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Here, although an ordinance already exists to prevent sidewalk obstruction, as Plaintiffs mention, it is clear the ordinance is ineffective. (*See* DK 11, **Exhibit D**). Moreover, the United States Supreme Court held that "we have emphasized on more than one occasion, when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill,* 530 U.S. at 726.

In *Hill*, the United States Supreme Court upheld a Colorado statute that made it a crime to:

> "knowingly approach another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or a handbill to, displaying a sign to, or engaging in oral protest, education or counseling with such other person in the public way or sidewalk area within a radius of one hundred feet from any entrance door to a health care facility."

C.R.S.A. §18-9-122

This statute created a buffer zone much larger and more restrictive than the one created by the Ordinance at issue. Essentially it creates a 16-foot diameter, or 8-foot radius "floating" buffer zone once a person is within 100 feet of a health care facility entrance. The *Hill* Court found that this 8-foot radius "bubble" buffer zone outside of healthcare facilities left ample room to communicate a message through speech with little interference on that speaker's ability to communicate. *Hill*, 530 U.S. at 729-30 ("Signs, pictures, and voice itself can cross an 8–foot gap with ease.") ("[D]emonstrators with leaflets might easily stand on the

sidewalk at entrances (without blocking the entrance) and, without physically approaching those who are entering the clinic, peacefully hand them leaflets as they pass by").

Here, the subject Ordinance creates one of the smallest buffer zones in the United States and speech is at most very minimally burdened. The Ordinance creates a small buffer zone, smaller than the one upheld in *Hill*, that extends ten feet from the entrance of a healthcare facility. Thus, if a person is walking directly in the middle of the buffer zone, Plaintiffs would be, at most, five feet away from the person entering the facility. Certainly, Plaintiffs can be seen, heard and distribute pamphlets between 5 and 10 feet away. Plaintiffs allege an absolute right to "evangelize" in a person's face as they enter a healthcare facility. This right does not exist and any burden on Plaintiffs' speech is minimal, thus the Ordinance is narrowly tailored.

Plaintiffs, in both their Memorandum (DK 15 at 14-17 and 19-21) and Amended Complaint, rely heavily on *McCullen*, 573 U.S. 464, a case in which the statute at issue created a 35-foot buffer zone outside of abortion clinics. The statute in *McCullen* in relevant part, stated:

> "No person shall knowingly enter or remain on a public way or sidewalk adjacent to a reproductive health care facility within a radius of 35 feet of any portion of an entrance, exit or driveway of a reproductive health care facility…"

*McCullen*, 573 U.S. at 464.

The buffer zone in *McCullen* made it a crime to come within a radius of 35 feet of a health care facility entrance. This is much larger than the 10-foot buffer zone at issue. Because the buffer zone was so large, the *McCullen* Court found that it burdened more speech than necessary to achieve the government's interest. *See McCullen*, 573 U.S. 464. It is crucial to note, however, that before the enactment of the 35-foot buffer zone at issue in *McCullen*, the Massachusetts legislature enacted a 6-foot radius buffer zone modeled after the 8-foot radius "bubble" buffer zone upheld in *Hill*, 530 U.S. 703. *See also, McCullen*, 573 U.S. at 470. The original 6-foot buffer zone was upheld by the First Circuit and denied review by the United States Supreme Court.

Here, the buffer zone created by the subject Ordinance is distinguishable and smaller from the buffer zone in *McCullen* and is more akin, if not less restrictive, than the "bubble" buffer zone upheld in *Hill*. Moreover, many states and cities have created narrowly tailored buffer zones around healthcare and reproductive facilities that are being upheld by federal courts. Most recently and notably, the Third Circuit Court of Appeals upheld an almost identical buffer zone ordinance in New Jersey. *See Turco*, 935 F.3d 155; *see* City of Englewood Code §307-3. Buffer zones in Pennsylvania and Chicago were also recently upheld by the Third and Seventh Circuits, and on July 2, 2020, the U.S. Supreme Court denied certiorari in both cases, leaving the ordinances in full effect. *Bruni v. City of Pittsburgh*, 941 F.3d 73 (3d Cir. 2019), cert. denied, 141 S.Ct. 578 (2021) (upheld 15-foot buffer zone ordinance); *Price*, 915 F.3d 1107, cert. denied, 141 S.Ct. 185 (2020) (upheld eight-foot buffer bubble zone ordinance).

### E. The Ordinance is Not Unconstitutionally Overbroad.

Plaintiffs argue that the Ordinance is overbroad in that it creates a buffer zone restricting "half a city block" and that requires Plaintiffs to stand across the street. (DK 5, Amended Complaint para. 29); *see also* DK 15, Plaintiffs' Memorandum at 17-24. Despite Plaintiffs gross misrepresentations, the reality is that the Ordinance is one of the smallest buffer zones in the United States. (*See* DK 11 **Exhibit B**, and the sub-exhibits to **Exhibit C**). Additionally, courts, including the Supreme Court, are reluctant to invalidate laws for overbreadth holding that it is a "'strong medicine' that is not to be 'casually employed.'" *United States v. Williams*, 553 U.S. 285, 293 (2008) (quoting *Los Angeles Police Dep't v. United Reporting Pub. Corp.,* 528 U.S. 32, 39 (1999)).

In *Hill*, the Supreme Court rejected plaintiffs' overbreadth challenge to 8-foot radius floating buffer zones at the entrances to healthcare facilities finding "the comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive." 530 U.S. at 731. The *Hill* Court differentiated general policy decisions made by governments from attempts to prevent unprotected speech only to inadvertently restrict protected speech stating that "it is not disputed that the regulation affects

11

protected speech activity; the question is thus whether it is a "'reasonable restrictio[n] on the time, place, or manner of protected speech.'" *Id*. (quoting *Ward*, 491 U.S. at 791). Here, the Ordinance is not overbroad because it is a policy decision to protect everyone equally and affecting everyone equally by creating a reasonable, modest restriction to ensure public safety.

Moreover, Plaintiffs insist that because the EMW Center is next to another healthcare facility, that facility is also required to have a buffer zone, in effect, creating one large buffer zone. (DK 15, Plaintiffs' Memorandum at 5-8.) However, the Ordinance does not require healthcare facilities to establish buffer zones. The buffer zones must be requested by the health care facility from Public Works per the Ordinance. The healthcare facilities next to the EMW Center have not requested buffer zones per the Ordinance. Thus, despite Plaintiffs' unrealistic hypotheticals, the Ordinance has only been requested at the EMW Center given the unique and long history of violence and harassment at this location. The Supreme Court is clear that laws may only be invalidated if the overbreadth is substantial and a there is a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975); *Ohralik v. Ohio State Bar Assn*., 436 U.S. 447 (1978); Parker v. Levy, 417 U.S. 733, 760–61, (1974)); *See also Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992) (listing cases).

Here, the buffer zone is relatively small and leaves ample room to be heard, seen and to pass leaflets. Therefore, the Ordinance does not "significantly compromise" or substantially burden Plaintiffs' First Amendment protections and, thus, the Ordinance is not overbroad. Additionally, the minimal time, place and other restrictions present with respect to the buffer zone do not rise to the level required for a 42 U.S.C. §1983 claim. Any restriction of Plaintiffs' speech, freedom of assembly, and free exercise of religion are minimal and justified by the government's significant interest in the subject Ordinance.

    **F.**    **The Ordinance Does Not Violate Plaintiffs' Right of Assembly.**

Plaintiffs allege in their Response Memorandum to Defendants' Motion to Dismiss that Defendants failed to complete an analysis on the freedom of assembly. (DK 15, Plaintiffs' Memorandum at 24.) However, the freedoms of speech and assembly substantially overlap and consequently the analysis are identical. *Ramsek v. Beshear*, 468 F. Supp. 3d 904, 914-15 (E.D. Ky. 2020), appeal dismissed and remanded, 989 F.3d 494 (6th Cir. 2021) (citing *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984)). Thus, Defendant's above analysis applies to both the freedom of speech and the freedom of assembly.

### G. The Ordinance Does Not Substantially Burden Plaintiffs' Religious Freedom.

Plaintiffs claim the Ordinance violates the First Amendment guarantee of free exercise of religion. DK 15, Plaintiffs' Memorandum at 26. Metro's Ordinance is a valid and neutral law of general applicability and therefore its application to Plaintiffs must be upheld even when it is claimed that "the law proscribes (or prescribes) conduct that [Plaintiffs] religion prescribes (or proscribes)." *Employment Div. Dep't of Human Resources of Ore. V. Smith*, 494 U.S. 872, 879 (1990) (superseded by statute) (quoting United States v. Lee, 455 U.S. 252, 262, n.3 (1982) (Stevens, J., concurring judgment). Plaintiffs claim the Ordinance violates their right to practice religion, but the ordinance is content-neutral and narrowly tailored, thus it does not violate Plaintiff's freedom of religion.

Further, KRS 446.350, Kentucky's Religious Freedom Restoration Act, is not violated as Plaintiffs claim (DK 15 at 27). In pertinent part, the statute reads "Government shall not **substantially burden** a person's freedom of religion." Ky. Rev. Stat. §446.350. Here, as previously noted, courts, including the United States Supreme Court, have found that buffer zones, including buffer zones more restrictive than the one at issue, do not substantially burden Plaintiffs' rights. See e.g., *Hill*, 530 U.S. 703 (2000). Moreover, the Sixth Circuit held that "a generally applicable law that incidentally burdens religious practices usually will be upheld." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 614 (6th Cir. 2020) (citing *Smith*, 494 U.S. at 878–79, 110 S.Ct. 1595; *New Doe Child #1 v. Congress of the United States*, 891 F.3d 578, 591–93 (6th Cir. 2018)).

13

Here, the Ordinance creates a "generally applicable law that incidentally burdens religious practices" only by requiring Plaintiffs to take place a few feet to the right or left of the clinic entrance. The Ordinance is distinguishable from the issue is *Maryville* because in that case, an Executive Order was prohibiting drive-thru church services but allowed the operation of laundromats, law firms, and hardware stores, etc., which the Court found arbitrary and thus violated the Plaintiffs rights. The Ordinance in this case creates an extremely narrow law of general applicability that treats everyone equally and does not provide for arbitrary allowances or exemptions.

### III. CONCLUSION

The plain language of the subject Ordinance creates a small buffer zone which must be requested by a healthcare facility. Because the buffer zone is modest and only created through request, the Ordinance does not substantially burden Plaintiffs' constitutional rights, and in fact, only places a very minimal burden on Plaintiffs' rights. Plaintiffs do not have an absolute right to "minister" or "evangelize" in someone's face as they enter a healthcare facility. However, Metro has a significant interest in protecting people entering healthcare facilities from assault, harassment, stalking and intimidation. Because Metro's interest is legitimate and significant, and the Ordinance does not substantially burden the Plaintiff's constitutional rights, Defendants should be granted summary judgment in their favor dismissing all of Plaintiffs claims as a matter of law. Alternatively, Plaintiffs' Amended Complaint should be dismissed for failure to state a claim.

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

BY: /s/ Natalie Johnson
NATALIE JOHNSON
JOHN F. CARROLL
Assistant County Attorneys
First Trust Centre
200 S. 5th St. Suite 200N
Louisville, KY 40202
Phone: (502) 574-4307

        Natalie.johnson@louisvilleky.gov
        John.Carroll2@louisvilleky.gov
        *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing Defendants' Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss with tendered Order was served via the Court's CM/ECF system and/or by U.S. Mail on the 8th day of July 2021, to:

Christopher Wiest
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Ste 104
Crestview Hills, KY 41017
chris@cwiestlaw.com

Thomas Bruns
4750 Ashwood Dr. Ste, 200
Cincinnati, OH 45241
tbruns@bcvalaw.com


        ___/s/ Natalie Johnson_____
        NATALIE JOHNSON