# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| SISTERS FOR LIFE, INC., *et al.* | Plaintiffs |
| v. | Lead Civil Action No. 3:21-cv-0367-RGJ |
| LOUISVILLE-JEFFERSON COUNTY METRO GOVERNMENT*, et al.* | Defendants |

\*\*\*

| | |
|---|---|
| EDWARD HARPRING, *et al.* | Plaintiffs |
| v. | Member Civil Action No. 3:21-cv-691-RGJ |
| LOUISVILLE-JEFFERSON COUNTY METRO GOVERNMENT | Defendant |

## PLAINTIFFS HARPRING AND KENNEY'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Edward Harpring and Mary Kenney,[1] by undersigned counsel, oppose Defendant Louisville-Jefferson County Metro Government's Rule 12(b)(1) motion to dismiss their complaint. [Doc. 76.] As explained herein, the County's motion is without factual and legal foundation and should be denied.

## INTRODUCTION

The County claims this case has become moot. In support, the County does not assert that the Ordinance has been amended or repealed. The County does not assert that EMW Surgical Services has been shut down or that women do not visit EMW or the public sidewalk outside its doors. The County does not assert there is no longer a buffer zone in place outside EMW or the other healthcare facilities throughout the County (albeit subject to a preliminary injunction). Instead, the County argues

---

[1] Unless otherwise noted, "Plaintiffs" refers to Plaintiffs in Member Civil Action No. 3:21-cv-691-RGJ: Edward Harpring and Mary Kenney.

that because abortion is currently illegal under Kentucky law, Plaintiffs no longer need to visit the public sidewalk outside EMW to counsel women entering or leaving that facility. The County is wrong. Plaintiff Edward Harpring has testified, by way of a sworn declaration, that he still goes to the public sidewalk outside EMW to pray and to counsel women. Plaintiffs continue to have Article III standing to challenge the Ordinance and this case is not moot.

In their memorandum in support of summary judgment, Plaintiffs have argued why this case is not moot. [Doc. 75-1, PageID.2425–2428.] Plaintiffs incorporate those arguments herein and supplement those arguments with the following facts and law.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

On May 20, 2021, Louisville Metro Council adopted Ordinance No. O-179-21, codified at Louisville Metro Code of Ordinance §132.09 [Ordinance, 3:21-cv-691, Doc. 1-1, PageID.20.][2] The Ordinance creates buffer zones outside **all healthcare facilities** within the County. *Sisters for Life*, 56 F.4th 400, 405 (6th Cir. 2022) ("the County sought to advance its interests by imposing a buffer zone on **all** medical facilities in Louisville") (emphasis in original). It imposes "a prophylactic ten-foot 'buffer zone' around the entrance of any 'healthcare facility' in the County and forbids any non-exempt individual from 'knowingly enter[ing]' or 'remaining . . . within' it." *Id.* at 402 (quoting LCMO § 132.09(B)(2)).

Harpring and Kenney have been visiting the public sidewalk outside EMW for many years to pray, and to speak with individuals entering or leaving the clinic. [Verified Complaint, 3:21-cv-00691, Doc. 1, PageID.3, ¶ 21.] Harpring and Kenney share a deeply held religious belief regarding the sanctity of human life, including the unborn. [*Id.* at PageID.4, ¶ 19.] This belief compels them to try

---

[2] Harpring and Kenney's lawsuit was docketed as Case No. 3:21-cv-691. Their lawsuit was eventually consolidated with Case No. 3:21-cv-367. Docket references in this brief that refer to their original case will have Case No. 3:21-cv-691 in the citation. The other docket references, without any case number, will be to the lead case, Case No. 3:21-cv-367.

to speak with and offer help to women seeking abortions at EMW. They do this by trying to approach such women in a caring manner, to walk alongside them, and to offer words of compassion, empathy, and consolation. [*Id.* at PageID.4, ¶ 21–22.] They also try to hand women pamphlets and other literature showing alternatives to abortion. [*Id.* at Page ID.4, ¶ 21.]

Harpring and Kenney do not go to the site to "protest" or "demonstrate" for or against abortion. On the contrary, they believe that the kind of loud, often harsh rhetoric and actions commonly associated with protests and demonstrations would be detrimental to their goals. [*Id.* at PageID.5, ¶ 25.] Neither Plaintiff engages in conduct that could be considered obstructing, trespassing, assaulting, or stalking of EMW patients, patients' companions, or staff. [*Id.* at PageID.5, ¶ 26.]

On June 24, 2022, the U.S. Supreme Court issued its decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2249 (2022), where the Court held that the U.S. Constitution does not "confer a right to abortion." *Id.* at 2279.

Based on that ruling, Kentucky's "trigger ban," KRS 311.772, went into effect. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, Nos. 2022-SC-0329-TG, 2023 Ky. LEXIS 4, at *7 (Feb. 16, 2023). With two narrow exceptions, that law bans abortion in the Commonwealth. *Id.*

Three days after *Dobbs*, on June 27, 2022, abortion providers challenged the legality of both the trigger ban and the heartbeat ban in Jefferson Circuit Court. *Id.* at *10. On July 22, 2022, after first entering a temporary restraining order against enforcement of the two laws, the circuit court entered an order granting a temporary injunction. *Id.* at *13.

That interlocutory, i.e., nonfinal, order was appealed and eventually adjudicated by the Kentucky Supreme Court in *Cameron*. The Court ruled that "the circuit court abused its discretion by granting the abortion providers' motion for a temporary injunction against both the trigger ban and the heartbeat ban." *Id.* at *53–54. The Court in *Cameron* did not decide the case on the merits. Far from it. Instead, the Court remanded the case to the circuit court "for the determination of the first-

party constitutional claims of the abortion providers as to the trigger ban. Specifically, whether the trigger ban was an unlawful delegation of legislative authority in violation of Sections 27, 28, and 29 of the Kentucky Constitution and if the trigger ban became effective upon the authority of an entity other than the General Assembly in violation of Section 60 of the Kentucky Constitution." *Id.* at 54. That case remains pending. [Court Order, *EMW Women's Surgical Center P.S.C. v. Cameron*, No. 22-CI-3225 (Jefferson Circuit Court, Division 3), Doc. 81-1, PageID.2548].

Even though Kentucky's trigger ban is currently enforceable—a fact that could change during the ongoing litigation involving the trigger ban in state court—Plaintiff Edward Harpring still goes to the public sidewalk in front of the EMW doors to pray and counsel and does so two or three times a week. [Harpring Declaration, Doc. 75-2, PageID.2432–2433, ¶¶ 3 and 5.] He has witnessed persons entering and exiting EMW on several occasions and has seen the car belonging to the EMW manager parked behind the building. [*Id.* at PageID.2433, ¶ 4.] Even after EMW allegedly stopped performing abortions, Harpring has met a number of women outside EMW who were not aware that EMW is not providing abortion services. [*Id.* at ¶ 5.] He has counseled them and directed some of them to BsideUforLife, a pro-life crisis pregnancy center next door to EMW. [*Id.*]

According to EMW's website, it is "OPEN and seeing patients!" *See* emwwomens.com (last visited April 3, 2023). At the bottom of the website's landing page are the posted business hours for EMW.[3] [*Id. See also* Lynch Declaration, Doc. 72-1, PageID.2362–2363.]

In *Sisters for Life*, the Sixth Circuit held that Plaintiffs were likely to succeed on the merits of their First Amendment facial challenge against the Ordinance. Importantly, the Sixth Circuit did not instruct this Court to enter a preliminary injunction only with respect to the buffer zone outside EMW,

---

[3] In their summary judgment memorandum, Plaintiffs inadvertently misspelled the website as "emwomens.com." [Doc. 75-1, PageID.2411.]

4

but also with respect to all buffer zones created by virtue of Louisville-Jefferson Ord. Code § 132.09(B)(2). 56 F.4th at 409.

On July 3, 2023, this Court followed that instruction and preliminarily enjoined the County from enforcing that section of the Ordinance. [Doc. 64.] With that order in place, Plaintiffs are permitted to enter and remain within 10 feet of the doors of EMW to pray and speak with women entering and leaving the facility, as Plaintiff Harpring does to this day. In fact, by virtue of the preliminary injunction, all persons in the County are currently permitted to exercise their First Amendment liberties in traditional public forums outside healthcare facilities without regard to the Ordinance's regulation of speech.

## STANDARD OF REVIEW

"Jurisdiction, including standing, is assessed under the facts existing when the complaint is filed." *ACLU of Ohio v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004) (cleaned up). The County acknowledges that Plaintiffs had standing at the time they filed their complaint. [Doc. 76-1, PageID.2446.] A potential issue of mootness arises *after* the suit has commenced, i.e., "during the course of litigation." *Id.* As the Sixth Circuit has explained:

> The doctrines of standing and mootness serve different purposes: "In essence, standing concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct 'was occurring at the time the complaint was filed' while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation."

*Id.* (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 525 (6th Cir. 2001)). The distinction between standing and mootness is important. In considering whether a case has become moot, "The **heavy burden** of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, NAACP*, 263 F.3d at 531 (emphasis added). A case becomes moot if "(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have

5

**completely and irrevocably** eradicated the effects of the alleged violation." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 625 (1979) (emphasis added).

As explained herein, the County cannot meet its burden.

## ARGUMENT

The County's mootness argument is predicated on the false notion that the "sole purpose" why Plaintiffs have challenged the Ordinance, i.e., the ability to counsel women entering or leaving EMW, no longer exists. [Doc. 76-1, PageID.2246.] Because the County's factual predicate is wrong, the argument based on that factual predicate is wrong.

First, the County is incorrect that Plaintiffs' "sole purpose" of going to the public sidewalk outside EMW is "to dissuade women from seeking abortions." [*Id.*] According to Plaintiffs' Verified Complaint, they visit the public sidewalk for two reasons (1) to pray, and (2) to speak with individuals entering or leaving the clinic:

> For the past 37 years and 15 years respectively, Harpring and Kenney have regularly used the public sidewalk in front of EMW to pray, and to speak with individuals heading to or from the abortion clinic.

[Verified Complaint, 3:21-cv-00691, Doc. 1, PageID.3, ¶ 21.]

There can be no question that the Ordinance bans Plaintiffs, and anyone else, from entering and remaining in a buffer zone outside a healthcare facility to pray. Thus, anyone who stands within a buffer zone and prays is subject to prosecution.

Like other forms of protected speech (one-on-one communication and leafletting) prayer is protected fully by the First Amendment:

> Private religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression. Indeed, in Anglo-American history, at least, government suppression of speech has so commonly been directed precisely at religious speech that a free-speech clause without religion would be Hamlet without the prince.

6

*Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) (plurality opinion) (citations omitted). *See also Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022) ("Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities."); *Shqeirat v. United States Airways Grp., Inc.*, 645 F. Supp. 2d 765, 786 (D. Minn. 2009) ("Praying in public . . . is protected speech under the First Amendment."); *Kyriacou v. Peralta Cmty. Coll. Dist.*, No. C 08-4630 SI, 2009 U.S. Dist. LEXIS 32464, at *9 (N.D. Cal. Mar. 31, 2009) ("prayer is protected expression under the First Amendment.").

Because Plaintiffs clearly averred in their verified complaint that they go to the sidewalk outside EMW to pray, in addition to speaking with women entering or leaving the clinic, the factual premise on which the County bases its motion to dismiss is without foundation. In addition, Harpring continues to go to EMW two to three times a week when he is in town to both pray and to speak with women who might be standing outside the front doors of EMW. [Harpring Declaration, Doc. 75-2, PageID.2432, ¶ 3.] The Ordinance bans Plaintiffs from praying within the EMW buffer zone and, as the Sixth Circuit held, the Ordinance's prophylactic ban on speech suffers from "many narrow-tailoring problems." *Sisters for Life*, 56 F.4th at 408.

The second factual problem with the County's argument is the County's assertion that "Plaintiffs are no longer ministering outside of the EMW Clinic because there is no need for Plaintiffs to minister anymore." [Doc. 76-1, PageID.2447.] Not true. As Harpring has stated:

> Even after EMW allegedly stopped performing abortions, I have met a number of women outside EMW who were not aware that EMW is not providing abortion services. I have counseled them and directed some of them to BsideUforLife, a pro-life crisis pregnancy center, located at 701 W. Muhammad Ali Blvd., Louisville, KY 40203.

[Harpring Declaration, Doc. 75-2, PageID.2433, ¶ 5.]

In other words, the core facts of Plaintiffs' complaint remain true: (1) Plaintiffs wish to pray and to speak with women entering and leaving EMW; (2) Harpring continues to pray and to speak

7

with women outside EMW to this day; (3) the Ordinance, which creates buffer zones outside all healthcare facilities in the County regulates Plaintiffs' speech activities within the zone outside EMW; and (4) without judicial relief, as is preliminarily in place at the present time, Plaintiffs are subject to penalties for entering or remaining in the EMW zone for engaging in protected speech.

For these reasons, none of the cases cited by the County in support of its motion to dismiss have any relevance. While the repeal or amendment of a "challenged statute" will usually eliminate the case-or-controversy requirement of Article III, the challenged legislation in this case—the Ordinance—has not been amended or repealed. [County MTD, Doc. 76-1, PageID.2448 (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)).] The same holds true for the other cases cited by the County, as the County's own description of those holdings explain. *See RYOMachine, LLC v. United States Dep't of Treasury*, 696 F.3d 467, 468 (6th Cir. 2012) (there was no live case or controversy **after law was amended**); *Miller v. Benson*, 68 F.3d 163 (7th Cir. 1995) (challenge was mooted **by amendment to law**, despite state court litigation challenging the new scheme). In *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174 (10th Cir. 2000), another case cited by the County, a constitutional challenge to Colorado's Fair Campaign Practices Act was mooted in part because the Colorado General Assembly had "substantially amended" parts of that law. *Id.* at 1181. While there is "no legally cognizable interest in the constitutional validity of an obsolete statute," the Ordinance is not obsolete, but still on the books. *Id.* at 1182.

Because Harpring has testified that he continues to engage in the same essential conduct alleged in Plaintiffs' complaint—even though abortion is currently illegal in the Commonwealth—this is not a situation where "[i]ntervening events have . . . '**irrevocably** eradicated the effects of the alleged violation.'" *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (emphasis added). Plaintiffs continue to have an interest—and a profound one at that—in this case. *ACLU of Ohio*, 385 F.3d at 645; *see also Knox v. SEIU, Local 1000*, 567 U.S. 298,

307–08 (2012) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot") (citation omitted).

Just last term, the Supreme Court reaffirmed the "requisite elements of Article III standing": "A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *FEC v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1646 (2022) (citing *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560-561(1992)). *See also Parsons v. United States DOJ*, 801 F.3d 701, 710 (6th Cir. 2015).

Thus, even if this Court to measure Plaintiffs' standing at this case's present posture, Plaintiffs continue to have Article III standing to challenge the Ordinance: (1) they have suffered an injury-in-fact that is concrete and actual, i.e., the impermissible regulation of their protected speech in a traditional public forum;[4] (2) their injury is traceable to the Ordinance that bars their speech in the buffer zone outside EMW (and all other healthcare facilities); and (3) a favorable decision by this Court will redress their injury by allowing them to continue to do what they have been doing for many years, praying and counseling outside the doors of EMW in a traditional public forum.

This case is not moot. Plaintiffs have standing. The case should not be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny the County's Rule 12(b)(1) motion to dismiss their complaint.

Respectfully submitted on this 6th day of April 2023.

---

[4] For purposes of standing, the Court must accept as valid the merits of Plaintiffs' claims. *Ted Cruz for Senate*, 142 S. Ct. at 1647; *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").

9

s/ Geoffrey R. Surtees
Geoffrey R. Surtees
American Center for Law & Justice
Post Office Box 60
New Hope, Kentucky 40052
Tel. 502-549-7020; Fax 502-549-5252
gsurtees@aclj.org

Edward L. White III*
American Center for Law & Justice
3001 Plymouth Road, Suite 203
Ann Arbor, MI 48105
734-680-8007
ewhite@aclj.org

*Admitted pro hac vice

*Counsel for Plaintiffs Harpring and Kenney*

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing via the Court's CM/ECF system, which will provide notice to all counsel or parties of record, on this 6th day of April 2023.

s/Geoffrey R. Surtees
Geoffrey R. Surtees
Counsel for Plaintiffs Harpring and Kenney
