UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SISTERS FOR LIFE, INC., et al.                                                     *Plaintiffs*

v.                                                            Civil Action No. 3:21-cv-367-RGJ

LOUISVILLE-JEFFERSON COUNTY                                            *Defendants*
METRO GOVERNMENT, et al.

* * * * *

### MEMORANDUM OPINION & ORDER

This matter is before the Court on the motions of Plaintiffs Sisters for Life, Inc., Kentucky Right to Life Association, Inc., and Angela Minter (collectively, "*Sisters* Plaintiffs") [DE 161] and Plaintiffs Edward Harpring ("Harpring") and Mary Kenney ("Kenney") (collectively, "*Harpring* Plaintiffs")[1] [DE 162] for attorney's fees and costs.  Defendants Greg Fischer, Louisville-Jefferson County Metro Government ("Louisville Metro"), Mike O'Connell, and Erika Shields (collectively, "Defendants") responded. [DE 163]. Plaintiffs separately replied. [DE 164; DE165]. Defendants filed a notice of supplemental authority, [DE 167] to which Plaintiffs separately replied. [DE 168, DE 169]. For the reasons below, the motions are **GRANTED in part and DENIED in part**.

### I.    BACKGROUND

The full background of this case is set forth in the Court's September 13, 2024 Memorandum Opinion and Order. [DE 157 at 3432-3447]. Plaintiffs challenged the constitutionality of a city ordinance, Ordinance O-179-21 ("the Ordinance") passed by Louisville Metro in 2021 and signed by then-Mayor Greg Fisher. [DE 2-1 at 43]. The Ordinance prohibits

---

[1] This case is the result of a consolidation of two actions, one brought by the *Sisters* Plaintiffs (civil action number 3:21-cv-367-RGJ) and one brought by the *Harpring* Plaintiffs (original civil action number 3:21-cv-691-RGJ). The Court consolidated the actions on January 6, 2022. [*Harpring* DE 19 at 177]. All docket entries from the original *Harpring* case are referred to as "*Harpring* DE." The *Sisters* and *Harpring* Plaintiffs are collectively referred to as "Plaintiffs."

persons from entering or obstructing a 10-foot-wide "buffer zone" in front of healthcare facilities except in certain circumstances. Louisville Metro Ordinance § 132.09(A) (2021). Plaintiffs sued asserting that the Ordinance is unconstitutional because it violates the First Amendment's Free Speech, Freedom of Assembly, and Free Exercise clauses as well as the Kentucky Religious Freedom Restoration Act ("KRFRA"). [*Harpring* DE 1 at 1-15; DE 28 at 1485-88].[2]

On February 25, 2022, the Court denied Plaintiffs' motion to preliminarily enjoin the Ordinance. [DE 55]. Plaintiffs appealed. [DE 56; DE 57]. On June 24, 2022, the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization* triggered a Kentucky state law banning abortion.  Ky. Rev. Stat. § 311.772(2).  On December 21, 2022, the Sixth Circuit reversed the denial of Plaintiffs' preliminary injunction, finding that Plaintiffs had shown a likelihood of success on the merits for their First Amendment claim.[3] *See Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400 (6th Cir. 2022).  Accordingly, the Court ordered a preliminary injunction, barring Louisville Metro from enforcing the Ordinance pending a trial on the merits of Plaintiffs' claims. [DE 64].

Defendants then moved to dismiss Plaintiffs' claims for mootness, citing the lack of patients and protestors at EMW after the outlawing of abortion in Kentucky. [DE 76]. Based on testimony elicited during an evidentiary hearing showing Plaintiffs were still involved in speech activities outside of healthcare facilities, the Court denied Defendants' motion to dismiss for mootness. [DE 130]. Meanwhile, Plaintiffs moved for summary judgment on all their claims.  [DE 74; DE 75]. The Court held an evidentiary hearing on the motions for summary judgment. [DE

---

[2] The *Harpring* Plaintiffs originally brought a Fourteenth Amendment due process claim alongside their First Amendment claim. [*See Harpring* DE 1]. They have since abandoned the Fourteenth Amendment claim.  [DE 75 at 2405].

[3] The Sixth Circuit's decision makes no mention of *Dobbs* or the change of law in Kentucky. *See Sisters for Life*, 56 F.4th 400. Defendants did not move to dismiss Plaintiffs' claims until after the Sixth Circuit ruling. Thus, the appellate panel did not address the change in circumstances or the issue of mootness.

145, Hr'g Tr.]. The Court granted *Sisters* Plaintiff's motion for summary judgment [DE 74] as to Count I of their Second Amended Complaint, dismissed Count II of *Sisters* Plaintiffs' Second Amended Complaint as forfeited, and granted summary judgment to Defendants as to Counts III and IV of the *Sisters* Plaintiffs' Second Amended Complaint. [DE 157]. The Court granted *Harpring* Plaintiffs' motion for summary judgment [DE 75]. [*Id.*] Finally, the Court permanently enjoined Louisville Metro from enforcing the Ordinance. [DE 157 at 3473].

Now, Plaintiffs move for costs and fees arguing they are prevailing parties under 42 U.S.C. §1988. [DE 161, DE 162]. *Sisters* Plaintiffs seek $364,765.36 in costs and fees, and *Harpring* Plaintiffs seek $234,801in costs and fees. [*Id.*, DE 164, DE 165]. *Sisters* Plaintiffs' motion is supported by declarations and a market rate study. [DE 161]. *Harpring* Plaintiffs' motion is supported by a declaration detailing the justification for the attorney's fees and methodology for fee calculation. [DE 162-1]. Defendants oppose awarding costs and fees, arguing Plaintiffs are not prevailing parties and that the injunction was irrelevant due to the Supreme Court's decision in *Dobbs*. [DE 163]. Defendants filed a notice of supplemental authority in support of their opposition to the motions, to which Plaintiffs responded in opposition. [DE 167, DE 168, DE 169].

## II.    DISCUSSION

The general rule is that each party must pay its own attorney's fees and expenses. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). However, Title 42 U.S.C. § 1988(b) provides that in actions to enforce § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . ." The "threshold determination" for district courts is whether the party seeking fees prevailed. *Hensley*, 461 U.S. at 433. If a party prevailed, any fee awarded must be reasonable, meaning that it "is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349

3

(6th Cir. 2000); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (cleaned up) (explaining that the goal of the fee-shifting statutes is "to induce a capable attorney to undertake the representation of a meritorious civil rights case" . . . "not to provide a form of economic relief to improve the financial lot of attorneys").

A district judge's exercise of discretion in statutory fee award cases is entitled to substantial deference, especially when the rationale for the award was predominantly fact-driven. *Id.* (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983))*; Wilson–Simmons v. Lake County Sheriff's Dept.,* 207 F.3d 818, 823 (6th Cir. 2000); *Hadix v. Johnson,* 65 F.3d 532, 534–35 (6th Cir. 1995). In exercising its discretion, the district court "must provide a clear and concise explanation of its reasons for the fee award." *Hadix,* 65 F.3d at 535 (citing, *inter alia, Hensley,* 461 U.S. at 437).

    a.  <u>Prevailing Party</u>

"A party 'prevails' when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties." *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025). Importantly, "both the change in relationship and its permanence must result from a judicial order." *Id*. A party is not "prevailing" merely by achieving a preliminary injunction, which only "temporarily preserves the parties' litigating positions based in part on a prediction of the likelihood of success on the merit." *Id*. Further, parties are not "prevailing" where "external events [] moot the action and prevent the court from conclusively adjudicating the claim." *Id*.

Defendants argue that the injunction against the enforcement of the Ordinance became irrelevant because of the Supreme Court's decision *in Dobbs v. Jackson Women's Health Organization* and thus Plaintiffs are not prevailing parties. [DE 163 at 3587]. The facts of this case have changed drastically over the course of the litigation, including post-*Dobbs* and since abortion was banned in Kentucky and EMW stopped operating and seeing patients. Nonetheless, anti-

abortion protestors continue to visit the clinic, Plaintiff representatives testified that they still visit EMW regularly to pray, and a representative of EMW said it had no plans to rescind its request for the buffer zone under the Ordinance. [DE 130 at 3066]. Most importantly, the Ordinance, which the Sixth Circuit ruled overly broad applying to every healthcare facility in the city of Louisville based on its plain language and which ruling this Court is bound, remains unchanged and is in force. [DE 130 at 3066]. Because Louisville Metro chose to leave the Ordinance in place, the Court, for the reasons fully articulated in its ruling on Defendants' motion to dismiss, could not rule the case moot. [DE 130]. *Dobbs* certainly resulted in the Kentucky legislature banning abortion, which necessitated the closing of EMW, and resulted in the Ordinance no longer being needed or enforced. However, as the Court previously ruled, *Dobbs* did not moot this case, and does not prevent Plaintiffs from being prevailing parties.

Defendants argue that Plaintiffs' success was technical and de minimis, thus they are not prevailing parties. [DE 163 at 3588]. The Court ultimately held that Plaintiffs failed to prove that the Ordinance created an over burden on speech, but instead that the Ordinance was not narrowly tailored in its location due to its inadvertent application to facilities with no established access issues. [DE 157 at 34568]. This resulted in the Court granting summary judgment in favor of *Sisters* Plaintiffs on Count I of their Second Amended Complaint for Violation of the First Amendment-Freedom of Speech under 42 USC § 1983, granting summary judgment in favor of the *Harpring* Plaintiffs on their Claim for Violation of the First Amendment-Freedom of Speech under 42 USC § 1983, and permanently enjoining Louisville Metro from enforcing the Ordinance. [DE 157 at 3467-3470].[4] While the Court agrees that Plaintiffs' success was technical and de

---

[4] As noted above dismissed the Court dismissed Count II of Sisters Plaintiffs' Second Amended Complaint as forfeited, and granted summary judgment to Defendants as to Counts III and IV of the Sisters Plaintiffs' Second Amended Complaint. [DE 157]. The Harpring Plaintiffs relinquished their Fourteenth Amendment claim in their motion for summary judgment, only pursuing the First Amendment claim. [DE 75-1 at 2405].

minimus in that the Ordinance was no longer being enforced, the Court nonetheless "conclusively resolve[d]" claims in their favor, "granting enduring relief on the merits that alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207. Here, the legal relationship has changed, as Louisville Metro is permanently enjoined from enforcing the Ordinance. This is the type of relief, no matter how technical or de minimus, that the Supreme Court has found warrants finding a party prevailing. *Lackey*, 604 U.S. at 207; *Hardrick v. City of Detroit*, 876 F.3d 238, 247 (6th Cir. 2017) ("the district court granted the plaintiffs a permanent injunction . . . [t]hat kind of injunctive relief is the quintessence of 'prevailing' status."). Defendants' argument goes more to the degree of overall success, rather than whether Plaintiffs are prevailing parties.  The overall degree of success is discussed below in assessing the reasonableness of the attorneys' fees sought.

Defendants argue the Supreme Court's decision in *Lackey v. Stinnie* and Sixth Circuit's decision in *Maryville Baptist Church v. Beshear* support a finding that Plaintiffs are not prevailing parties. But those cases are distinguishable. The Supreme Court's decision in *Lackey* established a bright line rule for when a party is prevailing, holding that such only occurs when "a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207. The Court held that a preliminary injunction obtained by a group of drivers that challenged a Virginia statute involving suspended licenses were not prevailing parties where the Virginia General Assembly repealed the statute, mooting the case, before the district court reached a final judgment. *Id*. at 202-03. The Court held a preliminary injunction is merely "temporary success at an intermediary stage of the suit," rather than the enduring relief required that changes the relation between the parties. *Id*. Thus, in *Maryville Baptist Church*, the Sixth Circuit concluded that the church plaintiff, despite obtaining a preliminary injunction, was not a prevailing party entitled to attorney's fee, where the

6

case was ultimately mooted by the Governor's subsequent revised orders and subsequent legislation from the Kentucky General Assembly. 132 F.4th 453, 456 (6th Cir. 2025). The Sixth Circuit further concluded that previous case law allowing an exception for attorney's fees in certain instances where preliminary injunctive relief was obtained are no longer good law. *Id*.

Here, unlike in *Lackey* or *Maryville Baptist Church*, Louisville Metro did not repeal the Ordinance and for all the reasons previously explained, the Ordinance remained in effect (although it was not being enforced), Louisville Metro gave the Court no reason to believe they would not enforce the Ordinance if the need arose, and the case was not mooted. [DE 130, DE 157]. Instead, the Court ruled in favor of Plaintiffs, granting summary judgment on their First Amendment claims because the Ordinance is overly broad in its location (not because it overburdens speech) and entered a permanent injunction enjoining Louisville Metro from enforcing the Ordinance. Although this outcome appears as form over substance since the Ordinance was not being enforced, the Court cannot say that this outcome does not constitute "enduring judicial relief on the merits that materially alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207; *see also Hardrick*, 876 F.3d at 247. Plaintiffs are thus prevailing parties entitled to some award of reasonable attorney's fees under 42 U.S.C. § 1988(b). However, the technical nature of the preliminary injunction, enjoining enforcement of an Ordinance that is not being enforced, does "bear on the propriety of fees awarded under § 1988," as discussed below. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). As noted above, Defendants' main objection to prevailing party status goes more the overall degree of success, and in turn, the reasonableness of the attorney's fees sought.

b. <u>Reasonableness of Fees</u>

Having determined that Plaintiffs are prevailing parties, it must be determined whether the attorney's fees sought are reasonable. In computing the amount, the "fee applicant bears the burden

of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Eckerhart*, 461 U.S. at 437. A "primary concern . . . is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd*, 227 F.3d at 349 (internal quotations and citation omitted). A reduction in attorney fees for a prevailing plaintiff "is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005).

In determining a reasonable fee, a district court "begins by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd*, 227 F.3d at 349). "A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The "prevailing market rate" is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). In determining a reasonable rate, "[a] district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011) (citing *B & G Min., Inc. v. Dir., Off. of Workers' Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008)); *Geier*, 372 F.3d at 791.

To prove that the requested fees are reasonable, the requesting party must provide "evidence supporting the hours worked and rates claimed." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992) (quoting *Hensley*, 461 U.S. at 433). In considering whether the time expended is reasonable, the Court should "exclude excessive, redundant, or otherwise unnecessary hours." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citing *Hensley*, 461 U.S. at 434).

A court may also consider the twelve *Johnson* factors in determining the lodestar fee or adjustments to it: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Reed v. Rhodes*, 179 F.3d 453, 471–72 n. 3 (6th Cir. 1999) (citing *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). One of the most important *Johnson* factors is the result achieved. *See Hensley*, 461 U.S. at 435–36; *see also Adcock-Ladd*, 227 F.3d at 349.

As noted the reasonableness of fees awarded under § 1988 is most importantly measured by "the degree of plaintiff's overall success." *Farrar*, 506 U.S. at 114 (citing *Hensley*, 461 U.S. at 436). Indeed, a trial court abuses its discretion when it does *not* consider the relationship between the fee awarded and the success obtained. *See Dean v. F.P. Allega Concrete Const. Corp.*, 622 F. App'x. 557, 559 (6th Cir. 2015). Where "a plaintiff obtains 'limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained.'"

*Isabel,* 404 F.3d at 416 (quoting *Hensley,* 461 U.S. at 435). Thus, after determining the lodestar amount, the court can adjust the fee upward or downward "to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349. However, "[t]he essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Neither Supreme Court nor Sixth Circuit precedent require courts "to cull through the records and conduct a[ ] line-item review." *Husted*, 831 F.3d at 713 n.11. Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox,* 563 U.S. at 838. Further, as noted above, "the 'technical' nature of a . . . judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Farrar*, 506 U.S. at 114.

In order for trial courts to take into account their overall sense of the suit, the Sixth Circuit "has recognized the propriety of an across the board reduction" where a sampling of the billing invoice or other facts reflect that a reduction is warranted, as opposed to line-by-line reductions. *Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (2005) (citing *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986) *abrogated on other grounds by Husted*, 831 F.3d 686); *see also Hensley*, 461 U.S. at 436-37 (stating that trial courts "may simply reduce the award" instead of "attempt[ing] to identify specific hours that should be eliminated"). This method is particularly appropriate when fee documentation is voluminous and "an hour-by-hour review is simply impractical and a waste of judicial resources." *Pianko v. Gen. R.V. Ctr., Inc.,* No. 20-CV-13371, 2025 WL 546935, at *4 (E.D. Mich. Feb. 19, 2025), *reconsideration denied,* No. 20-CV-13371, 2025 WL 1734045 (E.D. Mich. June 23, 2025) (quoting *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)). A district court may simply reduce the award to account for the limited

success, or it may eliminate the excessive hours; the approach the court chooses is within its discretion. *Hensley,* 461 U.S. at 436–37; *see also Auto Alliance Int'l,* 155 F. App'x. at 228.

       *1. Hourly Rate.*

      In their motions, *Sisters* Plaintiffs seek $364,765.36 in costs and fees, and *Harpring* Plaintiffs seek $234,801in costs and fees. [DE 161, DE 162, DE 164, DE 165]. *Sisters* Plaintiffs support their motion with affidavits from Mr. Bruns, Mr. Wiest, the affidavit of a civil litigator who undertook an evaluation of the hourly rates sought, detailed billings statements, and a Price Waterhouse Cooper Report ("PwC Report") relied upon by the Court in other matters. [DE 161-1, DE 161-2, DE 161-3, DE 164-2, DE ].[5] *Harpring* Plaintiffs support their motion with the affidavits of Mr. Surtees. [DE 162-1, DE 165-1].

      *Sisters* Plaintiffs were represented by two attorneys—Mr. Bruns and Mr. Wiest, which seek the rates of $550 per hour and $525 per hour respectively. [DE 161-1, DE 161-2]. Mr. Bruns has been practicing law for 34 years, has handled a significant number of constitutional claims in federal court, and is a named partner with a law firm in Cincinnati, Ohio. [DE 161-1 at 3495, 3496-97]. Mr. Wiest has been practicing law for 20 years, has handled a significant number of constitutional claims in federal court as lead or co-counsel, and maintains his law office in Covington, Kentucky where he employs an associate attorney. [DE 161-2 at 3520-30]. *Sisters* Plaintiffs also seek attorney's fees for Mr. Wiest's associate attorney, Mr. Roberts, at the rate of $250. [DE 161 at 3487]. Mr. Roberts graduated law school in May 2023, during the pendency of this litigation. [DE 161-2 at 3531]. Finally, *Sisters* Plaintiffs seek attorney's fees for their travel time at half their hourly rate. [*Id.*]

---

[5] *Sisters* Plaintiffs also submit an expert report in support of the reasonableness of their attorneys' fees, to which Defendants object. Because the issues addressed by the report are ultimately issues in the court's discretion and the court does not rely upon the report, it is unnecessary to resolve Defendants' objection to the report.

*Harpring* Plaintiffs were represented by Mr. Manion until he retired in 2023, and then Mr. Surtees, Senior Counsel with the American Center for Law & Justice, since Mr. Manion retired. [DE 162-1]. They seek rates of $590 per hour and $525 per hour respectively. [DE 162-1]. Mr. Manion practiced law for over 40 years, specialized in in First Amendment and religious civil liberties litigation, and worked for over 20 years out of the American Center for Law & Justice's office in New Hope, Kentucky. [DE 162-1]. Mr. Surtees has been practicing law 24 years, specializing in First Amendment and religious civil liberties litigation, and worked for over 20 years out of the American Center for Law & Justice's office in New Hope, Kentucky. [DE 162-1]. Two other attorneys worked on the case for *Harpring* Plaintiffs; however, but they do not seek those attorneys' fees or costs. [*Id*.]

While the attorneys representing Plaintiffs are well qualified, the Court does not find the "PwC Report" relied upon by the Court in other matters analogous to this case or representative of the prevailing market rate in the Louisville community for a case of this type. The PwC Report was a market survey of rates of practicing attorneys in comparably sized law firms within the same and nearby legal services market as a large regional law firm in Louisville, Kentucky. *The Honorable Order of Kentucky Colonels, Inc. v Kentucky Colonels International*, Civil Action No. 3:20-cv-132-RGJ, [DE 130-1 at 3736-3737]. That case involved claims of trademark misappropriation and counsel with expertise in intellectual property issues. [*Id*.]

This Court has more recently found the rate of $300 per hour reasonable in a case involving civil rights claims under 28 U.S.C. § 1983, *Ward v. Borders, et al*, Civil Action No. 3:16-cv-393-RGJ, [DE 232]. A very recent case from a sister district involving a prevailing party of claims under 28 U.S.C. § 1983 found $210 per hour reasonable for attorneys with 42 and 27 years of experience in the Covington, Kentucky, area. *Wynn v. City of Covington*, Civil Action No. 21-

12

137-DLB-CJS, 2025 WL 1746875, at *2 (E.D. Ky. June 24, 2025). A review of other sister district opinions support finding a lower hourly rate than $525-590 proposed by Plaintiffs. *See Reece v. Carey*, No. 3:16-CV-00069-GFVT, 2022 WL 701015, at *3 (E.D. Ky. Mar. 8, 2022) (finding the rate of $400 per house on the high end of those regularly approved in the Eastern District of Kentucky because of exceptional skill and experience in litigating civil rights cases). Further, in 2019, this district found $350 per hour for Mr. Bruns and $325 per hour for Mr. Wiest were reasonable rates. *Brooksbank v. Koch*, 2019 WL 7407401, at *3 (W.D. Ky. Apr. 15, 2019).  In 2020, a sister district found $375 per hour for Mr. Bruns and $350 per hour for Mr. Wiest reasonable rates. *Sweeney v. Crigler*, 2020 WL 7028703, at *1 (E.D. Ky. Nov. 30, 2020) (adopting report and recommendation recommending Messrs. Bruns and Winter receive $375 per hour and Mr. Wiest receive $350 per hour).  In 2022, a sister district court found $400 per hour for Mr. Bruns and $375 per hour for Mr. Wiest reasonable. *Ramsek v. Beshear,* No. 3:20-CV-00036-GFVT, 2022 WL 3591827, at *8 (E.D. Ky. Aug. 22, 2022).

The Court has considered the record and *Johnson* factors, including awards in analogous cases and the Court's experience and knowledge in handling similar fee requests in considering what rates are reasonable and proper for attorneys in this geographic area possessing similar skills and experience. Most of this litigation occurred during the 2021-2023 timeframe. The Court finds an hourly rate of $400 reasonable for Mr. Bruns and Mr. Manion and an hourly rate of $375 reasonable for Mr. Wiest and Mr. Surtees. Mr. Wiest's awarded rate is approximately 70% of the rate sought. The Court finds an hourly rate of $175 reasonable for Mr. Roberts based upon his level of experience, and which also represents approximately 70% of the rate sought.

2.  *Hours Worked*.

For *Sisters* Plaintiffs, Mr. Bruns expended 180.1 hours on this case, plus 12.4 hours for travel; Mr. Wiest expended 465.6 hours on the case, plus 10.2 for travel, and Mr. Roberts expended 3.2 hours on this case. [DE 161 at 3482]. For *Harpring* Plaintiffs, Mr. Surtees expended 310.3 hours on this case, plus 5 for travel, Mr. Manion expended 104.85 hours on this case, plus 13.8 for travel. [DE 162-1]. Mr. Surtees and Mr. Manion seek their full rate for their travel time.  [*Id.*].

First, as to travel time, "[t]he Sixth Circuit has often found travel time to be compensable if determined by the district courts to be the local practice regarding payment for travel time." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 372 (6th Cir. 2014)(citing *Monroe v. FTS USA, LLC,* No. 2:08–cv–02100–JTF, 2014 WL 4472720, at *7 (W.D.Tenn. July 28, 2014) and quoting *Robinson v. Elida Sch. Dist., Bd. of Educ.,* 99 F.3d 1139, 1996 WL 593535, at *3 (6th Cir. Oct. 15, 1996)); *see also Perotti v. Seiter,* 935 F.2d 761, 764 (6th Cir. 1991) ("We believe that matters of this sort [travel time] are within the discretion given the district court, which has greater familiarity with local practice than does this court, and we will not reverse on this record."). While travel time is often billed, the hourly rate depends on the amount of the travel billed.  Here, the quantity of travel is not excessive given the in-person evidentiary hearings and the *Sisters* Plaintiffs' counsel billed at a reduced rate. The Court finds it reasonable to similarly reduce the travel time for the *Harpring* Plaintiffs to a reduced rate of half.

Additionally, Defendants argue that the billing statements reveal redundant work between co-counsel, excessive conferencing, and drafting and researching on identical issues. [DE 163 at 3596]. Supreme Court and Sixth Circuit precedent clearly permit trial courts to reduce attorneys' fees awards "[w]here the documentation of hours is inadequate" or where there are duplicative efforts. *Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603–04 (6th Cir. 2014) (citing *Reed,* 179 F.3d at 472 and quoting *Hensley,* 461 U.S. at 433). It is the

14

responsibility of the party seeking attorneys' fees to document its entitlement to fees. *Id.* The Sixth Circuit has held that "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Products, Inc.,* 515 F.3d 531, 553 (6th Cir. 2008). Moreover, the Sixth Circuit has repeatedly affirmed reduction of fees for duplicative or excessive billing. *See, e.g., Sykes v. Anderson*, 419 F. App'x 615, 618–19 (6th Cir. 2011) (affirming an across-the-board fee reduction of 25% to address duplicative billing); *Hudson v. Reno,* 130 F.3d 1193, 1209 (6th Cir. 1997), abrogated on other grounds by *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843 (2001) (upholding a 25% reduction in fees award for duplication of efforts); *Coulter,* 805 F.2d at 152, *abrogated on other grounds by Husted*, 831 F.3d 686 (holding that a district court may apply an across-the-board reduction based on "excessive or duplicative hours" and approving a 50% across-the-board reduction where "duplication of effort is a serious problem").

This case was consolidated, and arguably counsel for *Sisters* Plaintiffs and *Harpring* Plaintiffs duplicated efforts. Additionally, *Sisters* Plaintiffs employed two attorneys who billed almost twice as many hours the attorney for the *Harpring* Plaintiffs.[6] *Gomez-Echeverria v. Purpose Point Harvesting, LLC*, No. 1:22-CV-314, 2025 WL 2638782, at *7 (W.D. Mich. Sept. 10, 2025) (citing *Coulter,* 805 F.2d at 152*, abrogated on other grounds by Husted,* 831 F.3d 686 (remarking that "multiple representation can be productive," but "there is also the danger of duplication, a waste of resources which is difficult to measure")). While this case certainly does not rise to the level of *Gomez-Echeverria*, with its numerous attorneys, there is the danger of duplication here where more than one partner is involved and more than one client with near

---

[6] The *Harpring* Plaintiffs were represented by two attorneys but for different timeframes as their first attorney retired during the pendency of this matter.

identical interests. However, Defendants' arguments are conclusory and do not undertake time and effort to identify with specificity the instances of alleged problems with the billing, leaving that task to the Court. *Perotti*, 935 F.2d at 764 ("Defendant's arguments to this court are mere conclusory allegations that . . . plaintiff's counsel employed poor billing judgment. These assertions do not suffice to establish that there was error . . .").

Here, Plaintiffs have presented the Court with detailed billings statements with explanations for the tasks completed along with affidavits explaining the nature and necessity of the work performed. The billing matches the timeline of the litigation. On the whole, the Court does not find the time and labor represented in the billing statements to be unreasonable. That said, the Court has some concern that work may have been duplicated given the case was consolidated, the *Sisters* Plaintiffs employed two attorneys and *Harping* Plaintiffs employed one attorney, and has debated a moderate reduction in the attorney's fees to account for this concern. The entries from the various attorneys make it difficult to assess specific duplicative efforts. However, in light of the reduction in the fees below to account for the degree of overall success in the case, the Court finds a modest to moderate reduction for duplicative efforts unnecessary as its concerns are accounted for in the reduction below.

### 3. *Degree of Plaintiff's Overall Success.*

Finally, the Court addresses the results obtained and degree of success achieved by Plaintiffs. "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Farrar*, 506 U.S. at 114. If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. And "[i]n some circumstances, even a

plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." *Farrar*, 506 U.S. at 115. For instance, in *Farrar*, the Supreme Court held that where a plaintiff seeking 17 million dollars in compensatory damages for a violation of constitutional rights only received nominal damages, the "litigation accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." *Id*. The Supreme Court upheld the reversal of the district court's award of attorney's fees without considering the relationship between the extent of the success and the fee awarded. *Id*. at 115-16.

The result in this case are akin to the technical or *de minimis* nominal damages in *Farrar*, and arguably the Court could award no attorneys' fees at all. 506 U.S. at 115; *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist*., 489 U.S. 782, 790 (1989) ("Where the plaintiff's success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in concluding that" denial of attorney's fees is appropriate). Count II of *Sisters* Plaintiffs' Second Amended Complaint was forfeited, and the Court granted summary judgment to Defendants as to Counts III and IV of the *Sisters* Plaintiffs' Second Amended Complaint. [DE 157]. Similarly, the *Harpring* Plaintiffs originally brought a Fourteenth Amendment due process claim that was abandoned when they moved for summary judgment. [DE 75 at 2405]. Although the Court granted summary judgment on Plaintiffs' First Amendment claims and permanently enjoined enforcement of the Ordinance, that was due to inadvertent drafting of the Ordinance causing it to be overly broad, not because it burdened Plaintiffs' speech as they claimed. [DE 157 at 3468-69]. The Ordinance itself, although not formally repealed, is no longer being enforced and the Court found that Plaintiffs failed to establish any burden the buffer zone imposes on these speech activities and emphasized its "rulings are not based on over burden of speech, as Plaintiffs

have not proven such." [DE 157, at 3465, 3469]. The relief awarded to the Plaintiffs has provided little to no practical impact given the Ordinance is not being enforced and will not be enforced while EMW is closed, and abortion outlawed in Kentucky. That said Plaintiffs did achieve some measure of success, albeit small, on liability in having the Ordinance enjoined as Louisville Metro chose not to repeal the Ordinance despite the Sixth Circuit's ruling that its scope was overly broad and the Supreme Court's decision in *Dobbs*, which led to the closing of the facilities for which the Ordinance was intended.

As a result, in light of the fact specific considerations of the overall success as well as concerns for duplicative efforts of the three attorneys, the Court finds a percentage reduction is proper so that the fee accurately reflects the degree of overall relief obtained by the Plaintiffs and will reduce the Plaintiffs' attorneys' fees by fifty percent. *Hines v. City of Columbus, Ohio*, 676 F. App'x 546 (6th Cir. 2017) (finding district court's 50% across-the-board reduction of lodestar, after reducing by 136.2 hours attorney's fees of law firm that represented arrestee, and reducing its hourly rates by an average of 36%, was not an abuse of discretion, in arrestee's civil rights action against police officer); *see also Richard v. Caliber Home Loans, Inc.*, No. 2:15-CV-02647, 2019 WL 4751741, at *10 (S.D. Ohio Sept. 30, 2019), *aff'd*, 832 F. App'x 940 (6th Cir. 2020) (concluding "that a 30% reduction in the total award of attorneys' fees is appropriate in this case given Plaintiff's limited, success"); *Snide v. Disc. Drug Mart, Inc.,* No. 1:11 CV 00244, 2013 WL 6145130, at *5 (N.D. Ohio Nov. 21, 2013) (upholding a 50% reduction of fees based on limited success); *Ne. Ohio Coal. For the Homeless v. Brunner*, 652 F. Supp. 2d 871, 886 (S.D. Ohio July 28, 2009) (concluding that a 20% reduction was appropriate "in light of Plaintiffs' meaningful, but less than total, success") (citing *Hensley*, 461 U.S. at 435; *Imwalle,* 515 F.3d at 552 ("An award based on the total number of hours reasonably expended on the litigation might, however, result in an excessive amount if the claimant has achieved only

partial success"); *Kentucky Restaurant Concepts, Inc. v. City of Louisville*, 117 F. App'x 415, 421–22 (6th Cir. 2004) (affirming 35% fee reduction based on partial success); *Farmer v. Ottawa County,* 2000 WL 420698 at * 7 (6th Cir. April 13, 2000) (in FLSA case, upholding district court's 33% reduction in attorney fee award in light of the "limited nature of Plaintiff's success; *Allen v. Allied Plant Maintenance Co. of TN., Inc.*, 881 F.2d 291, 300 (6th Cir. 1989) (same)). While it is difficult to find precedent perfectly on point because of the numerous fact specific circumstances of this case, that is the precisely why the Sixth Circuit permits trial courts to exercise discretion to "take into account their overall sense of a suit, and [] use estimates in calculating and allocating an attorney's time." *Fox,* 563 U.S. at 838.

Accordingly, taking into the account the hourly rates found reasonable above, the amount billed, and a fifty percent reduction, the Court finds the *Sisters* Plaintiffs entitled to $130,013.83[7] in attorney's fees and the *Harpring* Plaintiffs entitled to $80,062.5[8] in attorney's fees.

c.  Costs

Federal Rule of Civil Procedure 54(d)(1) authorizes a prevailing party to recover costs, other than attorney fees.  Recoverable costs are limited to those specified by 28 U.S.C. § 1920.  *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007) (courts have "discretion to decline requests for costs, not discretion to award costs that § 1920 fails to enumerate") (citing

---

[7]Calculated as follows: Mr. Bruns-184.2 hours x $400 = $73,680 + 12.4 travel hours x $200 =$2,480 = $76,160 reduced by fifty percent to $38,080; Mr. Wiest - 481.1 hours x $375 = $180,412.5 + 10.2 travel hours x $187.5 = $1,912.5 = $182,325 reduced by fifty percent to $91,162.5; Mr. Roberts 3.2 hours x $175 = $560 reduced by fifty percent to $280; $38,080 + $91,162.5 + $560 = $129,522.50 plus Mr. Bruns' travel expense of $491.33 discussed below under costs, for a total award of $130,013.83.

[8] Calculated as follows: Mr. Surtees 305.3 hours x $375 = $114,487.50 + 5 travel hours x $187.5 =$937.50 = $115,425 reduced by fifty percent to $57,712.5; Mr. Manion 104.85 hours x $400 = $41,940 + 13.8 travel hours x $200=$2,760 = $44,700 reduced by fifty percent to $22,350; $57,712.5 + $22,350 = $80,062.5 total award.

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)). "Although costs are generally awarded to a prevailing party as a matter of course, the district court maintains discretion in choosing to tax the costs of litigation against a losing party under Rule 54(d) of the Federal Rules of Civil Procedure." *Virostek v. Liberty Twp. Police Dep't/Trustees*, 14 F. App'x 493, 510 (6th Cir. 2001).

*Sisters* Plaintiffs seeks $4,367.86 in costs. Mr. Wiest specifically seeks $3,876.53 in costs for the filing fee ($402), court reporter fees for the deposition of Plaintiff Minter ($130.55), a deposition transcript for a Rule 30(b)(6) witness ($1,013), a notice of appeal filing fee ($505), PACER charges ($62.10), deposition transcripts for Plaintiffs Kenny and Harpring ($146.15), two hearing transcripts from the Court's official reporters ($327.81, $187.32), process server fees for Lt. Stewart a hearing ($204.30), the cost of transcribing a council meeting ($720), and costs of serving a subpoena on Caleb Stewart ($178.30). [DE 161-2 at 3541].

Section 1920 allows recovery of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case"; "[f]ees of the clerk," such as filing fees; and "costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920. "Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party." *Ashland Hosp. Corp. v. RLI Ins.*, No. CV 13-143-DLB-EBA, 2015 WL 5063184, at *2 (E.D. Ky. Aug. 26, 2015) (quoting *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.1989)). Accordingly, the Court will allow the costs for the deposition transcripts, hearing transcripts, and fees of the clerk. No support has been supplied for the need the cost of transcribing a council meeting and it will thus not be allowed.

Costs for service of summons or subpoena are "only taxable when they are initially paid to one of two specified officers of the court: the clerk or the marshal." *Phoenix Versailles Indus.*

*Invs. LLC v. Bourbon Pallet Dreams, LLC*, No. CV 5:23-196-DCR, 2024 WL 476861, at *3 (E.D. Ky. Feb. 7, 2024). Here, there is no indication that the costs for service sought by Sisters Plaintiffs were paid to the clerk or the marshal. Thus, these costs will not be allowed.

Courts have held that computer research fees are not costs under § 1920, including PACER fees. *Thompson v. Quorum Health Res.*, LLC, No. 1:06-CV-168, 2010 WL 2044542, at *7 (W.D. Ky. May 21, 2010). Thus, the PACER fees will not be allowed.

Mr. Bruns specifically seeks $491.33 in mileage reimbursement and parking fees. [DE 161-1 at 3517]. But "[c]osts 'for travel and related expenses by attorneys . . . are not listed in 28 U.S.C. § 1920 and therefore may not be reimbursed as costs.'" *Thompson*, 2010 WL 2044542, at *6 (W.D. Ky. May 21, 2010) (quoting *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997)). "They are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services." *Calderon*, 112 F.3d at 276 citing *Missouri v. Jenkins*, 491 U.S. 274, 285-89 (1989); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir.1988). Therefore, the Court will not award these as costs, but as part of Mr. Bruns' attorney's fees.

The permissible costs include:

1. U.S. District Court Filing Fee: $402.00
2. Court Reporter for A. Minter Deposition: $130.55
3. Deposition Transcripts for 30(b)(6): $1,013.00
4. Notice of Appeal Fee: $505.00
5. Deposition Transcripts (Kenney and Harpring): $146.15
6. Hearing Transcript: $327.81
7. Hearing Transcript: $187.32
8. Mr. Bruns Travel Expenses: $491.33[9]

[DE 171 at 3868]. After subtracting the impermissible charges, *Sisters* Plaintiffs' costs amount to $2,711.83 plus $491.33 in travel expenses to be awarded as attorney's fees.

---

[9] These expenses are allowed as attorney's fees, not costs, but included here for the sake of completeness.

### III.    CONCLUSION

For the reasons above it is **ORDERED**:

1.      Plaintiffs' motions for attorneys' fees and costs [DE 161, DE 162] are **GRANTED in part** and **DENIED in part**.

2.      Defendants are ordered to pay *Sisters* Plaintiffs $130,013.83 in attorneys' fees and the *Harpring* Plaintiffs $80,062.50 in attorneys' fees.  Defendants shall pay those attorneys' fees within **90 days** of the entry of this order.

3.      Defendants are ordered to pay *Sisters* Plaintiffs their costs in the amount of $2,711.83. Defendants shall pay those costs within **90 days** of the entry of this order.

Rebecca Grady Jennings, District Judge
United States District Court

September 30, 2025